17 N.J. Super. 472 (1952)
86 A.2d 275
EDWARD O. GERKIN, ET AL., PLAINTIFFS-APPELLANTS,
v.
VILLAGE OF RIDGEWOOD, A MUNICIPAL CORPORATION OF THE COUNTY OF BERGEN AND STATE OF NEW JERSEY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 1952.
Decided January 31, 1952.
*474 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Roy J. Grimley argued the cause for the appellants.
Mr. William E. Reinhardt argued the cause for respondent Village of Ridgewood.
Mr. Francis Caminetti argued the cause for respondent Upper Ridgewood Tennis Club (Messrs. Evans, Hand and Evans, attorneys).
The opinion of the court was delivered by JACOBS, S.J.A.D.
This is an appeal from a judgment entered in the Law Division sustaining the grant of a variance under R.S. 40:55-39(d), to the Upper Ridgewood Tennis Club, from the terms of the zoning ordinance of Ridgewood.
The Upper Ridgewood Tennis Club is a nonprofit corporation, organized in 1914, and the owner of land at Morningside and Bedford Roads, Ridgewood, on which seven tennis courts have been constructed. The surrounding area is admittedly residential consisting almost exclusively of substantial one-family residences. Prior to 1946 buildings for membership club purposes were permitted in the area; however, *475 none was built and the Upper Ridgewood Tennis Club conducted its premises largely as neighborhood tennis courts without any pertinent building. Under the zoning ordinance adopted on April 23, 1946, the area is within the one-family zone where buildings for membership club purposes are not permitted; such buildings may, however, be erected within the multi-family zone. The validity of the zoning ordinance is not attacked in these proceedings; under its terms the Upper Ridgewood Tennis Club may not erect any buildings for membership club purposes although it may continue its pre-existing operation of its tennis courts as a nonconforming use. R.S. 40:55-48.
In 1945 the tennis club had 80 members; in 1946 its membership increased to 196, and by 1950 it had increased to 361 including 50 who were not residents of Ridgewood. The club's activities likewise had increased and now include regular league tournaments during which visiting tennis teams compete with its team. Apart from the tennis courts and equipment there are no significant facilities at the club. In 1950 the club sought a permit to erect a $14.000 cinder block and frame building on its land but its application was denied; thereafter it appealed to the board of adjustment seeking a variance from the terms of the zoning ordinance and alleging undue hardship in that (a) the building "is necessary for the use and operation" of its property and (b) its property is not suitable for strictly residential use "without great loss and damage." The building as proposed by the club would include in its basement an equipment room and a men's shower and locker room, and on its ground floor a ladies' locker and shower room, an office, a supply room, and a caretaker's suite including kitchen, combined bedroom and living room, and lavatory.
In June, 1950, a hearing was held before the board of adjustment during which witnesses testified on the club's behalf and other witnesses, mainly neighboring residents, testified in opposition. These residents referred to the parking, noise, and other disturbances incident to increased *476 activity at the club and complained that the use of the premises was being changed substantially; they pointed out that although, unlike an earlier application by the club, no provision was being made for entertainment it would be impossible to restrain general social activity within and about the facilities afforded by the proposed building. It was not disputed that the club premises could readily be used for residential purposes within the terms of the ordinance, although that would involve loss of the club's investment in the tennis courts. Similarly, it clearly appeared that if the club's activities had not increased since the 1946 ordinance the need for extensive new facilities would not have arisen. However, the club took the position that in view of its increased membership the proper conduct of its affairs required the installation of sanitary equipment, the maintenance of a business office, and the housing of a caretaker, at the premises.
In August, 1950, the board of adjustment rendered its decision in which it expressed the view that the proposed building was not "in real effect an enlargement or extension of a nonconforming use," determined that "undue or unnecessary hardship" within the terms of the ordinance and R.S. 40:55-39 had been established, and recommended to the board of commissioners that the variance be granted. In October, 1950, the board of commissioners approved the findings and recommendation. This action was sustained by the Law Division and the appeal to this court was duly taken by the plaintiffs who are objecting neighbors.
It is settled that although R.S. 40:55-48 permits the continuance of nonconforming uses, it does not contemplate their enlargement or extension. Home Fuel Oil Co. v. Glen Rock, 5 N.J. Super. 63, 67 (App. Div. 1949). Recent decisions by our courts have stressed that the spirit of the Zoning Act is to restrict rather than increase nonconforming uses and that authority to vary the application of general zoning restrictions should be sparingly exercised. Lumund v. Rutherford, 4 N.J. 577, 585 (1950). In R.S. 40:55-39, which relates primarily to variances and exceptions, *477 the Legislature has, among other matters, directed that relief thereunder shall not be had unless it can be granted "without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." Although a board's determination under this provision and grant of variance are presumptively correct and will not ordinarily be displaced on judicial review, our courts have not hesitated to grant relief where the determination and grant of variance lacked reasonable basis. See Stolz v. Ellenstein, 7 N.J. 291 (1951); O'Connor v. North Arlington, 1 N.J. Super. 638 (Law Div. 1949); Ackerman v. Belleville, 1 N.J. Super. 69 (App. Div. 1948); Ramsbotham v. Paterson, 2 N.J. 131 (1949); Fonda v. O'Donohue, 109 N.J.L. 584 (Sup. Ct. 1932).
The uncontroverted evidence in the instant matter disclosed that the proposed building would not only enlarge or extend the preexisting nonconforming use but would convert the premises from their use in April, 1946, mostly as neighborhood tennis courts, to what was described before the board of adjustment as a "moderate country club." Although the operation of such membership "country clubs" was theretofore permissible in the area, the "comprehensive plan" of the 1946 zoning ordinance excluded them from the one-family zone while permitting them in the multi-family zone. Cf. Speakman v. North Plainfield, 8 N.J. 250, 256 (1951). It seems to us that the grant of the variance which, in substantial effect, permitted the operation of one such club in the one-family zone, substantially impaired the intent and purpose of the zone plan and zoning ordinance in violation of R.S. 40:55-39; it may be noted that the determinations of the board of adjustment and the board of commissioners contain no express finding to the contrary. See Lumund v. Rutherford, supra, where the Supreme Court recently said:
"The Zoning Act does not contemplate variations which would frustrate the general regulations and impair the overall scheme which is set up for the general welfare of the several districts and the *478 entire community. This philosophy has become increasingly prevalent since 1927 and is fortified by the language of the 1948 amendment to the Zoning Act. It is further strengthened by an amendment to the Zoning Act in 1949. See L. 1949, c. 242."
Cf. Brandt v. Mount Holly Tp., 16 N.J. Super. 113 (App. Div. 1951). It has been suggested that in view of the tennis club's continued right to operate the tennis courts as a nonconforming use permission to install sanitary facilities may be granted without running counter to the policy of R.S. 40:55-39 as expressed in the Lumund case. During the hearing before the board of adjustment several of the neighbors indicated that there would have been no objection to the installation of such minor sanitary facilities as might be deemed incidentally appropriate to a continuance of the use of the tennis courts in the same limited manner as they were operated in 1946. Cf. National House & Farms Ass'n., Inc., v. Oakland, 2 N.J. 11 (1949); Home Fuel Oil Co. v. Glen Rock, supra. They pointed to the fact that the variance as applied for and granted went considerably further and was therefore objectionable; for present purposes we consider it sufficient to express agreement with this view. We have accordingly concluded that the grant of the variance must be set aside under the terms of the concluding paragraph of R.S. 40:55-39.
Apart from the foregoing the board of adjustment assumed that although the tennis club's application was under R.S. 40:55-39(d) it was required to establish the "hardship" requirement expressed in R.S. 40:55-39 (c). The cases prior to the recent amendments of R.S. 40:55-39 were consistent to that effect. Ackerman v. Belleville, supra, 76; Brandon v. Montclair, 124 N.J.L. 135 (Sup. Ct. 1940), affirmed 125 N.J.L. 367 (E. & A. 1940). In Beck v. East Orange, 15 N.J. Super. 554, 560 (App. Div. 1951) Judge Waesche expressed the thought that in the light of the recent amendments the hardship requirement should be applied to the only provision where it is found, namely, paragraph (c) of R.S. 40:55-39. However, other decisions *479 suggest that the recent amendments have not effected any change in the ruling that the hardship requirement is equally applicable to paragraphs (c) and (d) of R.S. 40:55-39. See O'Connor v. North Arlington, supra. Cf. Stolz v. Ellenstein, supra; Kurowski v. Board of Adjustment, 11 N.J. Super. 433, 443 (App. Div. 1951). Under this latter view we would be obliged to determine that the grant of variance was improper for the additional reason that there was no sufficient showing of "exceptional and undue hardship" within R.S. 40:55-39. The increase in the club's activities which is cited as the justification for the proposed building occurred, in most part, after the adoption of the 1946 ordinance. It seems clear to us that a landowner in a strictly residential district who is permitted to operate a nonconforming business under R.S. 40:55-48 may not thereafter increase his business and then assert hardship as the basis of a variance permitting the installation of new facilities required as the result of the increased business. See Stolz v. Ellenstein, supra. Cf. Burmore v. Smith, 124 N.J.L. 541, 547 (E. & A. 1940); Struyk v. Samuel Braen's Sons, 17 N.J. Super. 1 (App. Div. 1951). The tennis club is free to use its premises for residential purposes as permitted by the ordinance or it may continue to operate its tennis courts as it did in 1946. It suffers no exceptional and undue hardship within the contemplation of R.S. 40:55-39 by not being permitted to convert its premises to the severely enlarged or extended use which it proposes.
Reversed.