51 N.J. Super. 560 (1958)
144 A.2d 273
ALEXANDER R. WHITEHEAD, SADIE M. HERRINGTON, MILDRED L. FLIEDNER, JOSEPH RULLI, ALFRED GREENHALGH, JOHN STEVEN, WILLIAM P. SPEIRS, CHARLES SCHILLON, MAE MEYERS, JOHN KUCHMAS, ANN OLSON, FREDERICK R. HUNEKE, WILLIAM TAYLOR, PATRICK CASSIDY, MARY C. CONLEY, CLARA MADONN, MARY W. TURNBULL, JOHN H. MERCER, MARGARET THOMSON, RICHARD J. SILLIMAN, JOSEPH QUICK, AND CHARLES W. UHLIG, PLAINTIFFS-RESPONDENTS,
v.
ZONING BOARD OF ADJUSTMENT OF THE TOWN OF KEARNY, NEW JERSEY, AND MAYOR AND COUNCIL OF THE TOWN OF KEARNY, NEW JERSEY, DEFENDANTS-RESPONDENTS, AND TENNIS REALTY COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1958.
Decided August 7, 1958.
*563 Before Judges STANTON, HALL and GAULKIN.
Mr. David A. Rappeport argued the cause for respondents Whitehead et als.
Mr. Daniel Leff argued the cause for appellant (Messrs. Simandl and Leff, attorneys; Mr. Leff, of counsel).
Mr. Robert J. McCurrie filed a statement in lieu of brief for respondents zoning board of adjustment and mayor and council.
The opinion of the court was delivered by HALL, J.A.D.
An applicant for a variance under R.S. 40:55-39, subd. d, as amended, brings this appeal from a judgment of the Law Division setting aside the variance granted by the council of the Town of Kearny on recommendation of the board of adjustment. The principal question involved is whether the statutory criteria were met, i.e., the existence, affirmatively, of sufficient "special reasons" and, negatively, of adequate evidence that the relief would be "without substantial detriment to the public good" and would "not substantially impair the intent and purpose of the zone plan and zoning ordinance." The matter was procedurally well handled both at the agency and trial levels, with a properly conducted hearing by the board, findings by that body, a stenographic record of the proceedings and judicial review had upon the record below. See Tomko v. Vissers, 21 N.J. 226 (1956).
Appellant is a corporation organized to hold the title to the premises in question, which it leases on a long-term basis to Arlington Players Club, a non-profit organization. We shall hereafter refer to both as the "club". Plaintiffs are objecting residential property owners in the immediate neighborhood.
The club property comprises a four-sided tract, somewhat more than an acre and a half in area. It is located in from *564 the southwesterly corner of Kearny and Washington Avenues and is almost landlocked. The easterly boundary, 264 feet long, abuts three vacant lots owned by the municipality which lie between the boundary and the westerly side of Kearny Avenue. This avenue runs the full length of the town from north to south and constitutes the main business thoroughfare. On the north the club property line, 284 feet long, abuts four rather shallow lots fronting on the south side of Washington Avenue and occupied by homes. On the southerly side, 280 feet in length, are the tracks of the Erie Railroad depressed in a cut. Beyond the cut are the rear lines of numerous residential properties fronting on the north side of Locust Avenue, a street which parallels Washington Avenue. The westerly line of the club is 226 feet long. About three-quarters of it runs along the easterly side line of a residence property which fronts on the southerly side of Washington Place. The remaining northerly quarter represents the only street frontage of the club property, running along the easterly side of Washington Place. This street runs off Washington Avenue to the south for a couple of hundred feet, then west for about the same distance and then returns northerly to the avenue parallel to its first course. It thus encircles a square or green, the northerly side of which fronts on the avenue.
The club has existed at the location to its present extent since about 1921 (prior to the adoption of the first zoning ordinance). On the westerly end of the property, close to and paralleling the tract boundary on this side is a club house, at least 100 feet long and 30 feet wide, containing meeting and club rooms and kitchen and sanitary facilities. East of the club house and occupying the northerly half of the property are five tennis courts; there are two more courts in the southeast corner. The ground between the most westerly of these latter two courts and the club house is an open lawn. The club is a private membership organization, the primary activities of which are tennis and social activities for the enjoyment and recreation of its members, most of whom are residents of Kearny. The club house facilities *565 are rented quite regularly to local civic and social groups and associations, including the Women's Club, Music Club and Girl Scouts for meetings and other functions. The lawn area is used by the individual members from time to time for picnics and informal outdoor games. There is no off-street parking and cars of members, guests and those attending functions must be parked along Washington Avenue and Place.
Under the present zoning ordinance, the club property, except for a few feet on the easterly end, is in the R-1 residence district, the highest grade residence zone in the municipality. The permitted uses therein, with a minimum lot area of 5,000 square feet, are one-family detached dwellings, including incidental professional offices of residents and the taking of not more than five boarders or roomers, municipal recreation buildings, playgrounds and parks, public and parochial schools, public libraries, museums, and art galleries, memorial buildings and churches and related structures. This zone encompasses substantially all the land in the town north of the railroad and west of the business area along Kearny Avenue. That street is strip-zoned as a central business district for general commercial and office uses for its entire length to a depth of approximately 100 feet on each side. Included within this strip is a small fraction of the club property, ranging from 11 feet in depth at its southeasterly corner to 48 feet at the northeasterly, now occupied by a part of the two most easterly tennis courts. The residential area on Locust Avenue, across the railroad cut, is in the R-2 residential zone, which permits, in addition to all R-1 district uses, two-family dwellings, private schools (as a special exception) and clubs (such as this one), lodges, and social and community center buildings, "excepting those a chief activity of which is a service customarily carried on as a business." Such uses are also permitted in the central business district.
The neighborhood adjacent to the club along Washington Avenue and Place is an established one-family residential area of good quality. It is rather closely built up with *566 dwellings of some age on small lots, there being 37 property owners within 200 feet of the club, and is described as a quiet, shaded section. There is no evidence of breakdown of the zoning regulations or of deterioration of the quality and characteristics of the area.
Admittedly, the club is a non-conforming use and has been since the adoption of the first zoning ordinance. Its application sought a variance to permit the construction of a swimming pool, 75 feet by 30 feet, a wading pool, 30 feet by 20 feet, and a parking area of 16,000 square feet for 50 cars. The pools were to occupy the present lawn area between the two southerly tennis courts and the club house and the parking area was to be constructed on the land now occupied by these two courts, with proposed entrance thereto by means of a driveway, an easement for which it was hoped could be obtained, across the municipally owned lots to Kearny Avenue. The pools would be 85 feet from the property line of the nearest house on Washington Place, 165 feet from that on Washington Avenue and 220 feet from that on Locust Avenue.
The principal reason advanced in support of the variance by evidence and argument before the board of adjustment was that the club was getting in financial difficulties by reason of loss of members (70 out of a total of 180 during the preceding year) and that the installation of the pools, with a proposed membership for that use of 170 families and 30 single individuals, would not only provide recreational facilities of a type in demand, but would assure sufficient revenue to maintain the organization and club house. The benefit to the community from continued availability of the building for meetings and functions of local civic groups was particularly stressed. Proposed methods and rules and regulations for operation of the pools to attempt to control or minimize any annoyance or nuisance to the neighbors, especially from noise and confusion, were submitted. It was manifest that the pools would, during the summer months, bring to the property daily a considerably larger number of people, including children, than now come *567 to play tennis and engage in other activities on the grounds. This was recognized not only in the provision for the off-street parking lot, but in showing by a diagram on the plan accompanying the application that 36 more cars could be parked along the three sides of Washington Place. The proposed manner of operation of the pools, including a canvas enclosure, also gave tacit cognizance to the well-known fact that a swimming pool utilized by sizeable numbers of adults and children in hot weather is necessarily going to produce more noise than seven tennis courts. Vehement objections to the variance were expressed by neighbors on all sides on the ground that the peace and quiet of the neighborhood was bound to be unduly disturbed. Testimony was also offered that residential real estate values would be depreciated by the pool use.
It is unquestionable that the variance sought was for leave to enlarge or extend the non-conforming use in the sense that something substantial as distinct from negligible was concerned, involving both a further and different use and the construction of additional structures and facilities, even though on and within the same tract of land. Gerkin v. Village of Ridgewood, 17 N.J. Super. 472 (App. Div. 1952), certiorari denied 9 N.J. 404, 88 A.2d 537 (1952); Heagen v. Borough of Allendale, 42 N.J. Super. 472, 480 (App. Div. 1956); Grundlehner v. Dangler, 51 N.J. Super. 53 (App. Div. 1958). In fact, the club inferentially so conceded when it applied for a variance; if what it proposed to do did not amount to such, no variance would have been required.
The board of adjustment, in recommending the variance by a 3-2 vote, found that the location of the pool on the property and the proposed canvas screening and operating regulations would check any noise and confusion and would not create a disturbance to neighboring residents and that the parking lot would "alleviate present and future parking problems connected with" the club. However, it imposed no conditions either as to manner of operation of the pool *568 or acquisition of the driveway easement. More important, it went on to say that the club
"presents a pleasant picture in the community and makes available a top level recreational need; in addition the club rooms provide an excellent meeting place for many of the social and civic clubs of the Town, without disturbing, the peace and harmony of the neighborhood. In order that the financial structure of the Tennis Realty Company be maintained it has become necessary to provide further revenue producing activities to the present tennis program, and in the opinion of the majority of the members of the Kearny Zoning Board of Adjustment, a swimming pool as proposed by the applicant will best serve this purpose, without damaging the intent and purpose of the zoning code or depreciating real estate values in the vicinity, or disrupting the harmony and peace of the neighborhood, and at the same time provide a much desired need in the community. It would be a step backward for the community to lose a club of this calibre * * *"
Consequently it concluded that these "special reasons" warranted the variance, that such would not "detrimentally affect the public good and will not impair the intent and purpose of the zone plan and zoning ordinance of the Town of Kearny * * * and the strict application of the zoning ordinance and regulation would result in an undue hardship upon the applicant."
The town council approved the recommendation and granted the variance by a 4-2 vote, the remaining 3 members being disqualified by reason of membership in the club. Judge Artaserse, in a comprehensive oral opinion, set aside the resolutions as arbitrary, capricious and unlawful, both on the basis of the proofs and as matter of law. On this appeal the club urges that the trial judge really substituted his judgment for that of the local agencies to which determination of the existence of the statutory criteria had been committed by the Legislature. In effect, it relies on the broad approach of Ward v. Scott (I and II), 11 N.J. 117 (1952) and 16 N.J. 16 (1954) and the recent opinion of this court in Grimley v. Village of Ridgewood, 45 N.J. Super. 574 (App. Div. 1957), certification denied 25 N.J. 102 (1957), particularly with reference to the meaning and existence of "special reasons." Stress is laid on the language of Justice Jacobs in the second Ward case:
*569 "Where, as here, the application for variance has been given careful and conscientious consideration by the zoning board and the town council and has been acted upon by both of them in strict conformity with the procedural and substantive terms of the statute, the ultimate interests of effective zoning will be advanced by permitting the action of the municipal officials to stand, in the absence of an affirmative showing that it was manifestly in abuse of their discretionary authority." (16 N.J. at page 23).
Plaintiffs, on the other hand, contend for affirmance of the judgment below on the stricter outlook prescribed in Moriarty v. Pozner, 21 N.J. 199 (1956), the latest decision of the Supreme Court in a subsection (d) variance case, and like the Ward cases, a decision of a divided court. The approach there is epitomized in the following language of Justice Heher:
"A `variance' is a relaxation of the general rule of the ordinance to alleviate conditions peculiar to a particular property, and thus to permit a use to which it is adapted and avoid an undue invasion of the right of private property by compelling conformance to an unsuitable permissible use, a burden upon the individual landowner that would be disproportionate to the common need. It has reference to a property uniquely circumstanced. This accommodation of public and private interests is in keeping with the statutory principle of use zoning by means of `general laws' and a `comprehensive plan.' The disintegration of the established use districts is the price of deviation from the principle." (21 N.J. at page 210.)
It may be intimated that Grimley indicates a reorientation of judicial thinking back toward Ward v. Scott, supra. Some of the language of the opinion would appear to lean in that direction, but the case actually involved only the validity of a variance permitting professional use of a portion of a house in a residential district by one other than a resident therein (the ordinance permitting such use by a resident owner or lessee), in a peculiar situation where a similar variance for the very property had been previously granted but not utilized and where this ordinance requirement had been substantially broken down in the immediate neighborhood over the years by one means or another.
However, we need not pursue this question further for we are satisfied that this variance cannot be sustained *570 under either point of view. Taking even the most liberal interpretation of the broad language of Ward v. Scott, supra, it is not just any reason or combination of reasons taken together, as found by the local agency from the evidence before it, which will suffice. At the very least, it must be found that the grant will serve one or more of the purposes of zoning set forth in R.S. 40:55-32. See 9 Rutgers L. Rev. 697, 714 (1955). And there must be in addition, competent proofs establishing the negative criteria of R.S. 40:55-39, as amended, that "the relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
Here the only real "reason" advanced in the board's resolution is the desirability of making it financially possible for a purely private club to continue in Kearny for the personal benefit of its members and the more or less incidential benefits to other segments of the community. This is not a reason serving any purpose of zoning. It is, of course, elementary, that the mere fact that the desired use in disregard of zoning restrictions is more profitable to the owner is insufficient. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64, 78 (1952); Berdan v. City of Paterson, 1 N.J. 199, 205 (1948). It is equally well settled that "[t]he statute plainly does not contemplate that zoning boards may grant or recommend variance solely on the basis of the peculiar internal problems or salutary motivations or activities of the particular land owner." Skaf v. Zoning Board of Adjustment of City of Asbury Park, 35 N.J. Super. 215, 223 (App. Div. 1955), a case denying a variance to a civic organization for a club house in a residential district. The other factors mentioned by the board, viz., off-street parking and protection against annoyance to the neighbors, even if bottomed on sufficient evidence, are not "reasons" serving any purpose of zoning in the proper sense. They amount at best to no more than saying that the variance will not hurt area residents any more than the present use. *571 That is no basis at all. Monmouth Lumber Co. v. Ocean Township, supra.
Looking at the situation from the Moriarty approach, there was clearly no evidence of compulsory conformance to an unsuitable permissive use if the variance were refused. Not even an attempt was made to contend that the property could not be utilized, in the inherent zoning sense, for its present non-conforming club use or for any other use allowed by the ordinance in the zone.
Even more significant and decisive is the holding of this court in Gerkin v. Village of Ridgewood, supra, a closely analogous situation. The opinion was written by Justice (then Judge) Jacobs, the later author of Ward v. Scott (I) and (II), supra. There a tennis club used property in a residential district for seven tennis courts as a non-conforming use. It obtained a variance at the local level, on the basis of undue and unnecessary hardship, to erect a building to house dressing and sanitary facilities, equipment and supply rooms, an office and a caretaker's living quarters. It was said increased membership necessitated the enlargement. The neighbors objected on the ground of parking, noise and other disturbances, claiming that the building could not help but bring about general social activity and additional annoyance. The grant was sustained by the Law Division. This court reversed, finding that there was no exceptional hardship, legally speaking, and that the variance would substantially impair the zone plan and zoning ordinance in violation of the statute. The situation at bar requires the same conclusion.
In view of the expressed basis of our decision, we find it unnecessary to consider plaintiffs' further contention that extension or enlargement of a non-conforming use by means of a variance is absolutely barred by virtue of the decision in Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189 (1955). See, also, Hochberg v. Board of Adjustment of Borough of Freehold, 40 N.J. Super. 271 (App. Div. 1956) and Grundlehner v. Dangler, supra.
The judgment is affirmed.