54 N.J. Super. 483 (1959)
149 A.2d 620
HARVEY TULLO AND IRMGARD TULLO, HIS WIFE; ROBERT L. KLAAS AND VIVIAN KLAAS, HIS WIFE; LELAND G. SUTHERLAND AND DOROTHY SUTHERLAND, HIS WIFE; ARTHUR A. SCHUCK, AND OLIVE SCHUCK, HIS WIFE; JOHN O. BRENNAN AND EDNA BRENNAN, HIS WIFE; SUMNER H. WILLIAMS AND RUTH WILLIAMS, HIS WIFE; JACOB H. OXMAN AND KATHERINE OXMAN, HIS WIFE; AND WILLIAM R. SIMS AND MAE SIMS, HIS WIFE, PLAINTIFFS, AND MORRIS MESSING AND HELEN MESSING, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
THE TOWNSHIP OF MILLBURN IN THE COUNTY OF ESSEX, A MUNICIPAL CORPORATION OF NEW JERSEY, BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MILLBURN AND SHORT HILLS CLUB, A CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1959.
Decided March 6, 1959.
*488 Before Judges PRICE, HALL and GAULKIN.
Mr. Louis Bort argued the cause for plaintiffs-appellants.
Mr. Douglas M. Hicks argued the cause for defendant-respondent Short Hills Club (Mr. Joseph M. Kraft on the brief).
Mr. Harold M. Kain argued the cause for defendants-respondents Township of Millburn and Board of Adjustment.
The opinion of the court was delivered by HALL, J.A.D.
This appeal is taken from a judgment of the Law Division in favor of defendants in an action in lieu of prerogative writ which sustained the recommendation of defendant board of adjustment and the approval by the Millburn Township Committee of a special exception to defendant Short Hills Club for the construction of an addition to its clubhouse and an outdoor swimming pool adjacent thereto. The plaintiffs below are nine neighboring property owners who objected to the pool before the municipal bodies. There was no objection there or attack in this litigation on the building addition. Only plaintiffs Messing have appealed the judgment.
*489 We are principally concerned with the following provision in the township zoning ordinance, applicable to all zones (residential, business and industrial):
"SCHOOLS, HOSPITALS, CLUBS, COMMUNITY CENTER BUILDINGS, SANITARIUMS & CEMETERIES. Recognizing the necessity for schools, hospitals, clubs, sanitariums and cemeteries, and at the same time the fact that they may be inimical to the public health, safety and general welfare, if located without due consideration of conditions and surroundings, the following procedure is ordained for their establishment:
An application for a permit for a school, other than a public school, a hospital, a club-house, a sanitarium, or a cemetery, shall be made first to the Board of Adjustment, which shall hear the application in the same manner and under the same procedure as the Board of Adjustment is empowered by law and ordinance to hear cases and make exceptions [sic; reference seems intended to be made to variances] to the provisions of a zoning ordinance, and the Board of Adjustment may thereafter recommend to the Township Committee that a permit be granted for a school, a hospital, a clubhouse, a sanitarium, or a cemetery, if in its judgment said school, hospital, club-house, sanitarium or cemetery, as it is proposed to be located, will not be detrimental to the health, safety and general welfare of the community, and is reasonably necessary for the convenience of the community, whereupon the Township Committee may by resolution approve or disapprove such recommendation, and in case such recommendation shall be approved, and all statutory and other municipal requirements shall be complied with, the administrative officer in charge of granting permits shall forthwith issue a permit for such structure or use subject to such requirement as to front, side and rear yards, and other reasonable restrictions as to structure or use as the governing body may see fit to impose."
Authority for special exception provisions in a zoning ordinance is derived from R.S. 40:55-39(b), as amended, granting power to boards of adjustment to hear and decide requests therefor "in accordance with the provisions of any such ordinance," i.e., on affirmative finding from the proofs before it that the standards specified in the ordinance have been met, plus negative findings from the proofs, as required by this statutory section as to both exceptions and variances, that the exception will be "without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
*490 The situation here involved is gleaned from the record before the board of adjustment on which the township committee acted and the review had in the trial court. It may be observed that the participation of the municipal governing body in the exception procedure in this ordinance goes beyond the statutory scheme, the latter reposing exclusive authority in the board of adjustment. Our Supreme Court has held, however, that the board's place in such instances may be made merely recommendatory by the local ordinance, with final approval reserved to the governing body. Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405, 419-420 (1952). (The Millburn ordinance provision appears to be practically identical with respect to standards and procedure as that before the court in Schmidt (9 N.J. at pages 411-412).) When the governing body is thus brought into the scheme, its function is akin to that committed to it in case of a variance under R.S. 40:55-39(d), as amended.
The club is a private membership organization organized in 1875 and incorporated in 1923. Prior to 1928 its clubhouse and related facilities were located in another section of the township. In that year it acquired its present site. Plaintiffs concede that in the same year it was granted a permit by the board of adjustment in accordance with the then ordinance for an exception for club use at that location and that the use so allowed and as presently operated is a permissive and not a nonconforming one.
In order that our subsequent discussion of the issues in this case may be viewed in their proper legal perspective, we interrupt the factual narrative to comment on the true nature of a "special exception" under our statute. The term might well be said to be a misnomer. "Special uses" or "special use permits" would be more accurate. The theory is that certain uses, considered by the local legislative body to be essential or desirable for the welfare of the community and its citizenry or substantial segments of it, are entirely appropriate and not essentially incompatible with the basic uses in any zone (or in certain particular zones), but not *491 at every or any location therein or without restrictions or conditions being imposed by reason of special problems the use or its particular location in relation to neighboring properties presents from a zoning standpoint, such as traffic congestion, safety, health, noise, and the like. The enabling act therefore permits the local ordinance to require approval of the local administrative agency as to the location of such use within the zone. If the board finds compliance with the standards or requisites set forth in the ordinance, the right to the exception exists, subject to such specific safeguarding conditions as the agency may impose by reason of the nature, location and incidents of the particular use. Without intending here to be inclusive or to prescribe limits, the uses so treated are generally those serving considerable numbers of people, such as private schools, clubs, hospitals and even churches, as distinguished from governmental structures or activities on the one hand and strictly individual residences or businesses on the other. This method of zoning treatment is also frequently extended to certain unusual kinds of strictly private business or activity which, though desirable and compatible, may by their nature present peculiar zoning problems or have unduly unfavorable effect on their neighbors if not specially regulated. Gasoline stations (also treated as special exceptions in the business and industrial zones in the Millburn ordinance and the subject of the ordinance provision under review in the Schmidt case) are an example of this second category. The point is that such special uses are permissive in the particular zone under the ordinance and neither non-conforming nor akin to a variance. The latter must be especially clearly distinguished. In the sense here discussed it relates primarily to the allowance of a use of a particular property prohibited in the particular zone for "special reasons." R.S. 40:55-39(d), as amended. Moriarty v. Pozner, 21 N.J. 199, 210-211 (1956); Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189, 198-199 (1955); Schmidt v. Board of Adjustment of the City of Newark, supra. Cf. Rockhill v. Township of Chesterfield, Burlington County, 23 N.J. 117 (1957); Borough *492 of North Plainfield v. Perone, 54 N.J. Super. 1 (App. Div. January 28, 1959). 1 Yokley, Zoning Law and Practice (2d ed. 1953), § 133; 1 Metzenbaum, Law of Zoning (2d ed. 1955), p. 813 et seq.
The club property then and now comprises 12 acres, four of which constitute a body of water known as South Pond, lying between Highland Avenue on the west and Lake Road on the east, in the high class Short Hills residential section of the township. The principal frontage is on Lake Road. There are vehicle entrances from both that road and Highland Avenue. Near the center of the tract, which is described as having a large number of trees on it, is the clubhouse erected in 1928. It is a substantial building and contains a large lounge, dining rooms, bedrooms for guests, kitchen, grill, squash courts, locker rooms, servants quarters and other facilities. Surrounding it on the grounds are parking areas for 90 to 95 automobiles, a considerable number of tennis courts and paddle tennis courts, terraces and a garage and service building. The courts and parking areas are located generally between the clubhouse and its residential neighbors. From the beginning of operations at the site, about 30,000 square feet or so of the pond, which touches Lake Road on the east and Lake Shore Drive on the south, have been used for swimming and located there are a swimming house, docks, floats, diving boards and a children's swimming crib.
Through the years the club has been used for social, recreational and athletic activities by its members and guests both in daytime and at night. It appears that the general nature of these activities has remained substantially the same. Presently there are about 275 members, whose families, including 327 children 16 years of age or under, use the facilities. Ninety percent of the membership are residents of the township, most of whom live within a rather short distance.
The club property is roughly near the center of the AA residence zone, the most restricted of the four one-family residence districts specified by the zoning ordinance. When *493 the premises were first used for club purposes there were only two dwellings in the vicinity. Since then many have been erected, including appellants', and there are now 34 within 300 feet of the property, including those of all but one of plaintiffs. All are in the $45,000 to $75,000 range and on substantial plots. (The differences between the four single-family residence zones are essentially in minimum lot area and dwelling size requirements.) It is obvious that the presence of the club and its activities has not interfered with the residential development of the area.
Recently swimming in the pond has become unsatisfactory, and possibly also unhealthy to some degree, due to the condition of the water. The club therefore proposed to construct an outdoor pool of some 3,600 square feet, plus a wading pool, in the center of the tract immediately adjacent to the north side of the club house, to be enclosed on two sides by the present building and the proposed addition at right angles thereto (designed to house facilities for use in connection with the pool and other activities). The other two sides would be at least partially screened by the tennis courts, a new fence and landscaping. Lights were planned for night swimming. The pool would only be available for the use of members and guests. It is expected that some increase in swimming over that at the pond would result, but no change in the character of the club or significant increase in membership is contemplated.
Conceiving that the construction of the pool and the addition to the building represented a substantial enough increase in the present facilities to require a further exception to be obtained, with which we agree, the club applied to the Board of Adjustment therefor pursuant to the ordinance. Notice was given to the property owners in the vicinity and a full hearing held at which proofs were presented by both the applicant and the objectors. The latter constituted eight of the 34 owners within 300 feet. Here it may be noted that the nearest house to the pool is located on Highland Avenue 285 feet distant. This owner was not an objector. Appellants' property is located on Joanna Way, *494 a street to the north of the club premises roughly parallel to Lake Shore Drive. Their property backs up to the club tract in the tennis court area and the dwelling is about 350 feet from the pool. Other plaintiffs live on Joanna Way and on the east side of Lake Road, some as close or closer than appellants, some considerably farther away. The main point of the objections was alleged increased activity and noise to the detriment of their personal comfort and depreciation of property values. On the latter point there was conflicting evidence before the board. A local realtor of long experience with values in Short Hills testified that the presence of the club had not had any detrimental effect on neighborhood property values, that, if anything, the proximity had enhanced values and that the proposed pool would have no detrimental effect. The objectors' expert, a real estate broker and appraiser from a community some distance away with no experience in sales in the vicinity of the club, expressed a contrary opinion largely on what he believed would be the noise factor based on his membership in a commercial swim club in another locality.
It should be noted that the Millburn ordinance permits not only single-family homes in the AA zone, but also professional offices of the resident owner or lessee, home occupations, churches and associated buildings, public school buildings, parks, playgrounds and athletic fields and public fire stations, libraries and museums. In all the residence districts rear yard family swimming pools are permitted situate not less than 12 feet from property rear and side lines.
The board of adjustment made findings and unanimously recommended the requested exception as to the building addition and pool but denied the request for additional parking area. The township committee adopted a resolution approving the recommendation, setting forth some additional findings and conclusions.
Plaintiffs below and appellants here urge two principal grounds for reversal: first, that the special exception provision of the ordinance does not authorize or encompass "private" clubs, and second, that the agency findings did *495 not show that the requisite ordinance and statute criteria had been met and the proofs were in fact inadequate to establish compliance with them.
Under the first ground it is contended that the ordinance provision applies to and means only clubs in the sense of "community organizations whose membership is open to the community at large and serving the social, cultural and recreational needs of the general public." This is a question of construction and interpretation and we are convinced, as was the trial judge, that the argument has no merit. There is nothing to suggest that "club" is being used in any but its ordinary meaning. It is difficult to conceive of a club where there are not some prerequisites or qualifications for membership which cannot be met by every resident of the municipality. The second sentence of the section demonstrates that the governing body contemplated other than public institutions in the category, for it speaks of schools "other than a public school." The other uses of hospitals, sanitariums and cemeteries can, by common practice, as well be private as public in character.
In further support of their contention appellants claim that the section sets up a standard of reasonable necessity for the convenience of the community and therefore only clubs open to any member of the public are contemplated. The argument misconstrues both the intent and requirement of the section. It does not have to be established on each application that the particular use involved is reasonably necessary to the community or its convenience. Such would go beyond the function and power of zoning and invade the social and economic fields. The whole purpose of the section, as set forth in the initial recital, is that the listed uses, public or private, are recognized by the governing body as such as are or may be necessary and desirable for the convenience and well-being of a well-rounded community and should be permitted, but the special zoning problems arising in connection with them dictate individual consideration and permission with respect to their particular location. It is the location, and not the use, to which reference *496 is intended in the body of the section when the standard of reasonable necessity for the convenience of the community is prescribed.
Nor do we find any strength in the additional argument under this point that the language of the ordinance limits the power to grant an exception to a clubhouse and not to a swimming pool or any other structure or activity. We are of opinion that such would be much to narrow a construction of the language used and could not have been intended. Usual accessory uses and structures to main buildings or uses must have been contemplated. To hold otherwise would preclude the private school from having a playground or athletic field, the hospital from having a nurses' home or the cemetery a chapel. Outdoor swimming pools have in recent years become a customary part of club activities. They have likewise become frequent as accessory to private dwellings which Millburn definitely recognizes and permits by its ordinance.
To proceed to appellants' second ground, it is, of course, elementary that, similar to the case of a variance, an applicant for a special exception has the burden of producing proofs before the Board of Adjustment to establish that the ordinance and statutory standards are met and the agency must make adequate basic findings of fact from that evidence leading to the ultimate finding or conclusion. The findings need not be in legal language and the ultimate findings or conclusions need not parrot the legislative verbiage. These ultimate requisites may be deduced from what is actually said. It must be kept in mind that the administrative bodies are composed of laymen. The prescribed procedural pattern is a general and flexible one, adaptable to the particular case. Tomko v. Vissers, 21 N.J. 226, 238-239 (1956).
Each application must be considered in its peculiar factual setting and the quantum of proof required will necessarily vary. In any special exception case the statutory criterion of absence of substantial impairment of the intent and purpose of the zone plan and ordinance plays a very *497 small part since the ordinance itself makes the proposed use permissive in the particular zone. The other statutory standard of absence of substantial detriment to the public good must have reference in such a case primarily to the weighing of the admitted general utility of the use and the public convenience of the requested location against the effect of disadvantageous factors on other uses in the area. The ordinance requirements of the location being not detrimental to the health, safety and general welfare of the community and being reasonably necessary for community convenience have much the same connotation.
Here the board of adjustment and township committee were not concerned with the establishment of a completely new club use in an established and exclusive residential area, but with a use that had been operating in substantially the same form for almost 30 years, during which expensive dwellings had been built all around it (the builders being, of course, charged with knowledge of the permissive features of the ordinance). The request was to enlarge the clubhouse (to which no one objected) and to change the site for swimming, always a part of the permitted use, from the pond to a pool for what the proofs disclosed to be a valid reason. The new swimming site was closer to some neighbors but farther from others than the old. The operation, so-called, was essentially the same although the patronage at the pool might well prove to be greater than at the pond. The whole situation was fully brought out by the history and physical facts presented to the board. Obviously there were many fewer factors involved in determining whether the proofs demonstrated that the standards had been met than would be the case if permission for the whole use were being sought for the first time. It was peculiarly within the province of the board to determine, in balancing the conflicting interests, whether there was likely to be such effect on property values and greater annoyance to neighbors as to amount to a sufficient detriment to the general welfare of the neighborhood to require the denial of the exception.
*498 We are satisfied beyond any doubt that there was adequate evidence before the board so that, under the particular circumstances here present, it could properly and reasonably find the standards of both statute and ordinance had been sufficiently met and it and the township committee could validly conclude the club was entitled to the requested exception. The function of the judicial branch is not to substitute its judgment for that of the administrative agency to which the Legislature has committed the determination. We can and should only interfere where the result is arbitrary, capricious or illegal in the light of the proofs. Tomko v. Vissers, supra (21 N.J. at page 241); Schmidt v. Board of Adjustment of the City of Newark, supra (9 N.J. at page 423). There is no question of such improper action here. The only question is not whether the evidence justified findings that could be made but whether the findings as actually made are sufficient. We agree with the trial judge that they are adequate. Sufficient compliance is found, in the situation here present, with minimal requirements as reiterated in the latest consideration of the question by the Supreme Court. Grundlehner v. Dangler, 29 N.J. 256 (1959).
The board of adjustment, a body of laymen, obviously made its findings, in resolution form, immediately on the conclusion of the hearing without the desirable assistance of counsel. Reading these findings in the light of the situation and the proofs, we think they may be fairly paraphrased, as was done in the club's brief, as follows, all of which, as has been noted, find adequate support in the evidence:
"1. The Club has been operating at its present location for 30 years.
2. During the said 30 years there have been no detrimental effects upon property values in its vicinity.
3. All but two of the houses in the area, a high-class residential area in the `AA' district, have been built since the Club has been in operation.
4. The contemplated use does not constitute a change in the nature of the use of the property.
*499 5. The facilities for swimming would be modernized.
6. The facilities for swimming would be better patronized by reason of the modernization.
7. The actual area available for swimming will be reduced.
8. The site of the pool is several hundred feet from the houses of the nearest objectors.
9. There was insufficient evidence that the contemplated use would be detrimental to the health, safety and general welfare of the community.
10. During its time of occupancy in the past, the Club has caused no detrimental effects and some good effect to the welfare of the community.
11. The requested use would be an asset to the community."
Item 11, as we have indicated, is not a requisite and is of no moment. Item 9 puts the ordinance standard in the negative. It will be noted that there is no exact finding that the location is reasonably necessary for convenience and no ultimate findings in the precise language of the negative criteria of the statute, but we believe such conclusions, under the circumstances, are inherent in and may be properly deduced from the findings actually expressed. Any defect in the negative wording of item 9 was corrected by the township committee in its approving resolution when it affirmatively concluded that the requested extension of use "will not be detrimental to the health, safety and general welfare of the community." This the governing body had the power and right to do. It also made additional basic findings of fact, which, actually unnecessary to support the grant, we have disregarded, since such a body, in approving or disapproving a recommendation, is limited to reaching additional or different conclusions or inferences from the basic facts as found by the board and may not make new or different basic findings. Tomko v. Vissers, supra (21 N.J. at page 236); Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64, 75-76 (1952).
Appellants suggest that the earlier decision of this court in Whitehead v. Kearny Zoning Board of Adjustment, 51 N.J. Super. 560 (App. Div. 1958), dictates a reversal here. True, indeed, there was an application by a membership club to construct an outdoor swimming pool and the favorable *500 action of the municipal agencies was reversed. But the cases are fundamentally different. In Whitehead the club was a non-conforming use in a residential zone. The ordinance contained no applicable special exception provision as here. The club consequently had to seek a subsection (d) variance and establish special reasons within the purposes of zoning which it was unable to do. Above all, the physical situation and effect of the proposed pool were quite different.
The judgment is affirmed.