DAVID COOPER, *ET AL.*, PLAINTIFFS-APPELLANTS, v. THE MAPLEWOOD CLUB, *ET AL.*, DEFENDANTS-RESPONDENTS.

DOROTHY M. COOPER, *ET AL.*, PLAINTIFFS-APPELLANTS, v. THE BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MAPLEWOOD, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued November 2, 1964—Decided December 14, 1964.

Mr. *David J. Schapira* argued the cause for plaintiffs-appellants (Messrs. *Schapira, Steiner & Schapira,* attorneys; Messrs. *Joel Sondak* and *David J. Schapira,* on the brief).

Mr. *Charles E. Villanueva* argued the cause for defendants-respondents (Messrs. *Van Riper & Belmont,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. The members of the Maplewood Club, a private recreation club in the Township of Maplewood, decided in May 1961 to construct an outdoor swimming pool on the Club property. The preliminary plot plans were rejected by the Township engineer because they did not conform to the zoning ordinance. Mr. Lebovitz, a neighboring property owner, and one of the plaintiffs, who had expressed some concern about the proposed pool construction, was informed to that effect by the Township Clerk. The Clerk promised to notify him of any future developments.

On April 6, 1962 the Club applied to the Township building inspector for a permit to erect a bathhouse and swimming pool on its property, which he granted the same day. On April 19, 1962 an item appeared in the *Maplewood News Record* saying that the Club had been granted a permit to construct the pool. On April 20 the Township Clerk telephoned the Lebovitzes that a permit had been granted. Shortly thereafter Mr. Lebovitz informed several of his neighbors. On May 1, 1962 a number of property owners in the neighborhood of the Club appeared before the Township Committee to protest the issuance of the permit. The Township Committee told them the permit had been issued and the Committee could do nothing. On the following day, May 2, 1962, excavation was begun. Until this excavation work several other neighboring property owners, also plaintiffs, were not aware of the proposed construction. On May 4 a number of property owners commenced a suit in the Superior Court, Law Division, alleging that the issuance of the permit violated the Township ordinances and demanded that the Club be enjoined from constructing the pool. An interim restraint was immediately entered and construction was discontinued. On May 11 the trial court continued the restraint during the pendency of the action and ordered that the plaintiffs be given leave to apply to the Board of Adjustment for a review of the propriety of the building inspector's issuance of the permit. In the opinion of the trial court the Township's ordinances did not forbid

the construction of the swimming pool so long as the pool would not be injurious to any district as a place of residence.[1] All parties agreed that the determination of injuriousness was a factual one for the Board of Adjustment. Plaintiffs

---

[1] The ordinance which in the opinion of the trial court permitted the swimming pool provided:

"1. In all one family residence districts, no building, structure, or premises shall be used and no building or structure or alteration, enlargement or extension of the same shall be constructed unless designed, arranged or intended to be used exclusively for one or more of the following purposes:

a. Single detached house used as a residence by not more than one family.

b. The office of a physician, surgeon or dentist when situated in the same dwelling used by such physician, surgeon or dentist as his private residence.

c. A church or any place of worship including the parish house and Sunday school building.

d. A public library, museum, art gallery or community center building.

e. A building used exclusively by the Federal, State or County or local municipal government for public purposes, but not including workshops or warehouses.

f. *A club* (excepting a club the chief activity of which is a service customarily carried on as a business).

g. A railroad passenger station.

h. A public park or playground or a municipally owned, operated or controlled parking lot.

i. Such accessories as are customarily incident to the foregoing uses and *not injurious to any district as a place of residence.* Such accessories shall not include a business or manufacturing, but may include:

One private garage for each dwelling with provisions for not more than three motor vehicles.

A fence not over 4 feet in height no portion of which shall be nearer to the street line than the building line hereinafter defined or nearer to the street line than the face of the building exclusive of an entrance porch, whichever distance from the street line shall be the greater.

*A private swimming pool,* provided that in other than one-family residence districts, a private swimming pool shall not be considered an appurtenance except to a dwelling occupied by not more than three families." (Emphasis added)

promptly filed an appeal under *N. J. S. A.* 40:55–39(a)[2] with the Board of Adjustment, which was heard by that body on May 21 and 22. The Board had a rule which required that an appeal from an action of the building inspector be taken within 30 days. Although plaintiffs' appeal was taken more than 30 days from the issuance of the permit, the Board relaxed its rule, over the Club's objection, to hear the matter on its merits. On July 31, 1962 the Board by a vote of 3–1 (one member disqualified himself) upheld the action of the building inspector. On September 11, 1962 some of the plaintiffs instituted a second action which included a charge that the decision of the Board was arbitrary, capricious and unreasonable. The two complaints were then consolidated and heard in the Law Division by Judge Crane, who ruled that the issuance of the permit be set aside because the finding of the Board that the proposed use would not be injurious to the district as a place of residence was arbitrary, capricious and unreasonable. The defendant Club appealed to the Appellate Division, which reversed the trial court, and affirmed the decision of the Board of Adjustment, holding that there was substantial evidence before the Board from which it could reasonably determine that the proposed use would not be injurious to any district as a place of residence. We granted the plaintiffs' petition for certification. 42 *N. J.* 290 (1964).

The following evidence was presented at the hearings before the Board of Adjustment:

The Maplewood Club, a nonprofit organization, was organized in 1916. For a number of years it owned a large tract of property fronting on Ridgewood Road, Collinwood Road and Claremont Avenue, in the Township of Maplewood. The Club has sold off the land fronting on these streets, with the exception of a narrow driveway, so that it now owns a virtually

---

[2] "The board of adjustment shall have the power to:

a. Hear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, decision or refusal made by an administrative official or agency based on or made in the enforcement of the zoning ordinance."

landlocked tract of 2.1 acres. This tract is now surrounded by homes which were described by the defendants' real estate expert as "fine upper middle class residences." The topography of the land slants downward from west to east. Therefore, the homes located west of the Club property are higher, while the properties to the east are on a lower level. Both the Club and the surrounding properties are located in the two highest residential zones of the Township.

On the tract the Club has the following: four tennis courts, a clubhouse with facilities for bowling, dancing, banquets, and other social and civic functions, and a parking lot. The parking lot can accommodate approximately 50 automobiles. Other than the tennis courts there are no facilities for outdoor recreational activities.

The parking lot is located in the northwest corner of the Club property. To the south of the parking lot is the clubhouse. The tennis courts occupy the southeast corner of the premises. The Club's plans call for an outdoor swimming pool, and a separate wading pool for children, to be constructed in the southwest corner of the premises. The pool itself is to be approximately 78 feet long and 43 feet wide. It is to be surrounded by a terrace. The over-all dimensions of the pool and terrace area will be about 135 feet from north to south, by 78 feet from east to west. Adjacent to the west side of the terrace will be constructed a bathhouse 88 feet long by 16 feet wide and approximately 9 feet in height. The rear of the bathhouse will be 12 feet from the Club's western property line and 16 feet from the southern property line. The terrace surrounding the pool will be 29 feet from the Club's western line, and 6½ to 10 feet from the southern property line. Proceeding counterclockwise from the northwest corner, the properties of Goldman, Widger, Yeskel, Millman, Dorfman, and Sklar abut the Club on the west side. Most of these properties are 70 feet in width and 147 feet in depth. The Lebovitz property is separated from the Club by the 70-foot width of the Sklar property which is to its east. The properties of William Black, Haggerty, Sparks, Maetzel,

and Smith abut the Club's property to the south. Most of these are approximately 50 feet in width and 100 feet in depth. The properties of Heinle, Bates, George Black, Mueller, and Gruen abut the Club property on the east. These properties vary in width from 58 feet to 123 feet and in depth from 113 feet to 188 feet. The Cooper property is separated from the Club by the 58-foot width of the Gruen property to its south. On the north side are the properties of Blaisdell and Apetz. The Collins property is separated from the Club by about 25 feet of the Apetz property. The Blaisdell property is 120 feet by 120 feet, the Apetz and Collins properties are approximately 60 feet by 120 feet.

Many of the homes surrounding the Club have rear screened porches, patios and outdoor barbeque areas. The residents of these properties obviously have contemplated using their back-yards for family recreation and relaxation during the summer.

The Club has a general membership of 150 members, whose families are permitted to use the Club facilities. One hundred of these members, 90 of whom have an average of two children, will be swimming pool members. Thus at least 370 people will be entitled to use the pool facilities.

Many of the objectors testified that the Club as presently operated has caused them inconvenience and annoyance. For example, Mr. Collins testified that Club members walk across his property to get to the Club. Mr. Dorfman complained that the noise from the tennis courts was disturbing on Sunday afternoons. Mrs. Blaisdell stated that she and her husband had been bothered by people using the Club who parked in front of her house on Collinwood Road and walked through her property to go to the Club. Mr. Cooper testified that users of the Club parked their cars on the street in front of his house and blocked his driveway. Mr. Mott, who lived next to the Goldman property, stated that the noise from the Club had disturbed him and that on one occasion he had to call the police. Mr. Silence, who lived on the corner of Collinwood Road and Ridgewood Road, about 200 feet from the parking lot of the Club, testified that the parking facilities of the Club

were inadequate to take care of club affairs which drew a fairly substantial number of people.

A number of property owners testified both in favor of and against the proposed pool construction. Of the non-abutting property owners, Mott, Cooper, Silence, Grodnick, Collins, Gray, and Hochman testified against the proposed use. All lived within a few hundred feet of the Club. Generally, their objection was that the proposed swimming pool would bring additional noise and parking problems. Rodat, Tischner, and Infranger were non-abutting property owners who testified in favor of the pool. Mr. Rodat was the Club president and resided on Euclid Avenue, at least a block away from the Club. Mr. Tischner was a recently joined member of the Club, and lived across the street from the driveway entrance. Mr. Infranger lives 785 feet from the Club on Euclid Avenue. These witnesses testified generally that the pool addition to the Club would be an asset to their properties.

Four owners of abutting property testified in favor of the proposed pool. Three were Club members—Apetz, Gruen, and William Black. The properties of Apetz and Gruen abutted the Club property on its northernmost corner, where the parking lot is located. Their properties are approximately 265 feet from the proposed pool area and separated from it by the Club parking lot, the driveway and the clubhouse; they testified that the proposed facilities would be an asset to them and their families.

William Black's property abuts the Club property on its southwest corner, where the swimming pool is to be built. The bathhouse will be 16½ feet from his rear property line and the pool terrace will be 10 feet from that line. Mr. Black testified that he and his family had lived on his property for three years and he had joined the Club within the last five months. He stated that he thought the pool would be a definite asset which would offer a fine opportunity for recreation for him and his family.

The remaining abutting property owner who testified in favor of the pool was Mr. Bates. His property is on the

eastern line of the Club, where the tennis courts are located. The rear line of his property is therefore approximately 150 feet from the nearest terrace of the pool. He testified that the proposed pool would be an asset to his property, and he was "only sorry that your waiting list is too long."

The Club also called George Black, whose property abuts the property of Mr. Bates on the north. His testimony, however, was inconclusive. He testified that the pool itself would not affect the value of his property but "what would happen with the use of it would be another thing."

Seven abutting property owners testified against the proposed facilities. Mrs. Blaisdell, whose property abuts the Club parking lot on the north, between Apetz and Gruen, testified that she thought the new facilities would result in children's running up and down her property. Goldman, Widger, Yeskell, Millman, Dorfman, and Sklar, all owners of property abutting the entire western length of the Club property line, testified that the proposed use would lower the value of their properties and result in a material increase in noise. The properties of Millman, Dorfman, and Sklar abut the Club property at the location of the proposed pool, terrace, and bathhouse. Millman's and Dorfman's rear property lines will be but 12 feet from the proposed bathhouse and about 29 feet from the terrace.

Both sides offered the testimony of real estate experts. The objectors' experts testified that the proposed pool area would be detrimental to the residential atmosphere of the neighboring properties and would adversely affect their values. On the other hand, the Club's experts testified that the pool would be an asset and would not be injurious to the properties in the district.

■ The Board of Adjustment, after hearing the foregoing evidence, concluded that the construction and proposed use of the swimming pool would not be injurious to the district as a place of residence within the meaning of the zoning ordinance. It is settled that a reviewing court will not disturb such a finding by a board of adjustment unless the court finds

that the board's determination lacked reasonable basis. See *Stolz v. Ellenstein,* 7 *N. J.* 291 (1951); *Schmidt v. Board of Adjustment, Newark,* 9 *N. J.* 405 (1952); *Gerkin v. Village of Ridgewood,* 17 *N. J. Super.* 472 (*App. Div.* 1952); *Whitehead v. Kearny Zoning Bd. of Adjustment,* 51 *N. J. Super.* 560 (*App. Div.* 1958); *Tullo v. Millburn Tp.,* 54 *N. J. Super.* 483 (*App. Div.* 1959). The issue before us therefore is whether the Board of Adjustment had before it evidence from which it could reasonably conclude that the proposed swimming pool and bathhouse would not substantially injure the present residential quality of the surrounding neighborhood. Although the evidence showed complaints about some of the present activities of the Club which caused noise and traffic congestion, generally the witnesses agreed that the activities were not intolerable. The question is thus narrowed to whether the addition of the proposed pool will be so substantial an increase in the outdoor activity of the Club as to materially detract from the residential quality of the neighborhood.

While there is conflicting testimony by the real estate experts regarding the impact as to property values, we are satisfied that the presence of the pool will be "injurious to any district as a place of residence." We accordingly hold that the Board's determination that it would not be injurious was unreasonable.

The contrast between the noise from the use of four tennis courts and the noise from the use of a swimming pool such as has been described above should be evident to all who are familiar with the two activities. Tennis playing at the Club involves, at any one time, a maximum of 16 participants using a large area of land. The game as usually played is not accompanied by a great deal of shouting and other disturbing noises. Further, the usual spectators are relatively quiet. On the other hand, the swimming pool described above would accommodate many more people in a much smaller area. Pool activities are particularly attractive to children. Continued shouting and other loud noises are inevitable. Moreover, the members and

their families will congregate on the terrace surrounding the pool. This, without doubt, will substantially augment the sounds coming from the pool itself and probably will produce even more noise than the actual pool activities. As we noted previously, the terrace is but a few feet from the property lines of a number of the surrounding residences. Because of the above circumstances, we are convinced that the proposed swimming pool use will destroy the tranquility of the present residential character of the neighborhood. It is understandable that Club members living in the vicinity of the Club would conclude that the recreational advantages of having a swimming pool nearby would outweigh the disadvantages of noise and traffic congestion. But it is not their interests alone which the ordinance seeks to protect—the ordinance protects the residential quality of all the properties in the neighborhood. We agree with Judge Crane, who concluded that the facts in this case clearly indicate that only one reasonable conclusion can be reached—that the proposed use in the light of its nearness to neighboring residential properties would be injurious to the districts as a place of residence. Since we find that the Board's determination lacked a reasonable basis it cannot be upheld. See *Stolz v. Ellenstein, supra; Gerkin v. Village of Ridgewood, supra; Whitehead v. Kearny Zoning Bd. of Adjustment, supra.*

We think *Tullo v. Millburn Tp., supra,* 54 *N. J. Super.* 483 (*App. Div.* 1959), relied on by the defendants, which also involved the addition of a swimming pool to already existing club recreational facilities, is clearly distinguishable on its facts. There the club was situated on 12 acres of land, four of which were covered by a pond. A substantial part of the pond had been used for swimming over a long period of time, and a swimming house, docks, floats, diving boards, and a children's swimming crib had been in use. The club desired to substitute a pool for the pond as a place for swimming. The nearest residence was 285 feet from the proposed pool. The Appellate Division upheld the decision of the local authorities permitting the construction of the pool and pointed out that the pro-

posed use was substantially similar to swimming activities which had been in existence for almost 30 years. The court distinguished the facts before it from a situation where permission for the use, as here, was sought for the first time. *Id.,* at *p.* 497.

The defendant Club contends that this Court should not invalidate the building permit since it was regularly issued by the building inspector and the Club has made substantial expenditures in reliance thereon. We reject this argument for the following reasons:

First, the permit was not regularly issued. The Township application form filed by the Club is an application for a permit under "An Ordinance to Permit and Regulate the Erection or Construction of Outdoor Swimming Pools on Private Properties within the Township of Maplewood." Section 1 of the ordinance defines private swimming pools as pools appurtenant to a residence occupied by not more than three families. And section 9 states that no private swimming pool shall be constructed unless a residence is located on the same lot or the lot is "part of a residence curtilage." Thus a club pool is clearly not permitted by that ordinance. Furthermore, the Club admits that it is not entitled to the pool if it will be injurious to any district as a place of residence, yet the Club has never asserted that the building inspector made a determination that the proposed pool would not be injurious. In fact, at the argument before Judge Crane, the Club agreed that the Board of Adjustment was the proper authority to determine the issue of injuriousness. Therefore, expenditures incurred before that determination by the Board of Adjustment should not be the basis for an estoppel.

Second, assuming the permit was issued within the ambit of the building inspector's authority, about which there is grave dispute,[3] the permittee is not entitled to rely upon its apparent validity within the normal time for appeal if the

---

[3] The question is whether discretion of this nature, *i. e.,* determination of injuriousness, should be solely in the Board of Adjustment as a special question under *N. J. S. A.* 40:55–39(b).

finding of the building inspector is debatable. *Jantausch v. Borough of Verona,* 41 *N. J. Super.* 89 (*Law Div.* 1956), affirmed 24 *N. J.* 326 (1957). In the present case, the finding of the building inspector was not only debatable but also, as we have concluded, erroneous. The permit was issued on April 6, 1962. The plaintiffs commenced their action in the Superior Court and obtained an interim restraint on May 4, 1962, which was within the 30-day time limit fixed by the Board of Adjustment for appeals from determinations of the building inspector. Whether the plaintiffs proceeded in the court or by appeal to the Board of Adjustment is immaterial—the salient fact remains that the defendants had notice that their permit was being challenged. Since that notice came within the 30-day appeal period, they had no right to rely upon the permit. *Cf. Hodgson v. Applegate,* 31 *N. J.* 29 (1959).

Moreover, no formal notice was given to any of the surrounding property owners because none was required by the ordinance. We do not believe that the 30-day appeal rule of the Board was intended to apply to neighboring property owners. While it is reasonable to measure the time for appeal by one seeking a permit from the date of rejection of his application, it does not seem reasonable to apply the same rule to surrounding property owners who had no notice that the permit was granted. Under such a rule, the permittee would need only wait the required days before commencing construction to effectively bar legal action by surrounding property owners.

One of the plaintiffs, Mr. Lebovitz, first learned of the issuance of the permit on April 19, or 20, 1962. He and several of the other plaintiffs appeared to protest at the Township meeting on May 1. Several of the other plaintiffs did not learn of the permit until excavation was begun the following day, May 2. Two days later, on May 4, the plaintiffs commenced their action in the Superior Court and obtained an interim restraint. Under these circumstances we are convinced that the plaintiffs acted with as much speed as the circumstances permitted. To deny relief here on the ground that plaintiffs' actions came too late would, in effect, bar any challenge by

neighboring property owners where a permit is granted without formal notice.

The plaintiffs have contended from the outset that the swimming pool ordinance and the zoning ordinance, when read together, do not permit a club to have an outdoor swimming pool as an appurtenance. In the light of our holding that the determination of the Board of Adjustment must be set aside for the reasons heretofore given, it is unnecessary for us to consider the issue of construction of the ordinances.

The judgment of the Appellate Division is reversed and the judgment of the Law Division is reinstated.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.