60 N.J. Super. 146 (1960)
158 A.2d 338
ERIC SCHOELPPLE, MARY SCHOELPPLE, AUGUSTINE LAVIN, HELEN LAVIN, JOHN BALLEK AND JOAN BALLEK, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF WOODBRIDGE, A MUNICIPAL CORPORATION, AND MAR-RAY INC., A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1959.
Decided February 24, 1960.
*147 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Sam Weiss argued the cause for the appellants (Messrs. Garretson, Levine & Deegan, attorneys; Mr. Joseph F. Deegan, Jr., of counsel).
Mr. Nathan Duff argued the cause for respondent Township of Woodbridge; Mr. Joseph M. Feinberg argued the cause for respondent Mar-Ray Inc. (Mr. Sanford Halberstadter on the brief).
*148 The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiffs appeal from the judgment of the Superior Court, Law Division, upholding a variance granted under N.J.S.A. 40:55-39(d) to Mar-Ray Inc. to build an A. & P. supermarket in a residence zone.
The premises for which the variance was granted are known as Lots 28, 12 and 13 in Block 414 on the Woodbridge tax maps. They are described as follows:
(a) Lot 28 has a frontage on the westerly side of St. George Avenue of 315.16 feet.
(b) Its southerly boundary extends 722.82 feet in a westerly direction parallel to North Hill Road.
(c) The northerly boundary extends 376.20 feet from St. George Avenue, parallel to the southerly line to a point, and then southwesterly 423.72 feet to its intersection with the southerly line.
(d) Lots 12 and 13 have a total width of 50 feet fronting on Chain O'Hills Road, and extend southerly approximately 200 feet to Lot 28.
The entire tract contains 3.656 acres. Abutting this tract are residence lots upon which dwellings exist, those fronting on North Hill Road being 125 feet deep and those fronting on Chain O'Hills Road being about 200 feet deep. Within a radius of two miles there are nine other supermarkets.
St. George Avenue is "strip zoned" for business to a depth of 100 feet. The remainder of lot 28 and all of lots 12 and 13 are in an area zoned as "Residence B." In this zone there are permitted, in addition to dwellings, boarding houses and rooming houses for not more than five paying guests, hotels, churches, schools, public libraries or public museums, clubs, philanthropic institutions other than correctional institutions or asylums, central telephone exchange buildings, parks and playgrounds, and farming, truck gardening, nurseries or greenhouses.
In addition to building the supermarket, which will contain about 15,000 square feet, the applicant intends to pave all of the property (except the half-acre triangle formed at the westerly end of lot 28 by the intersection of its side *149 lines) to provide a 2 1/2-acre parking area for 300 automobiles and (over lots 12 and 13) a driveway from the parking area into Chain O'Hills Road. The parking area will be illuminated with mercury vapored lamps. The store will be open every day until 9 P.M., on Friday until 10 and on Saturday until 6 P.M. The applicant plans to build a rustic fence about the boundaries of the parking area and the driveway into Chain O'Hills Road.
After the briefs were filed in this appeal the Supreme Court decided Andrews v. Board of Adjustment of the Township of Ocean, 30 N.J. 245 (1959). At the oral argument defendants took the position that the Andrews case (especially as interpreted in the dissenting opinion) is completely dispositive of this appeal. It has been pointed out, however, that the dissent is not to be taken literally. Sussna, "Zoning in Transition," 82 N.J.L.J. 473, 480 (1959); Cunningham, "Control of Land Use in New Jersey," 14 Rutgers L. Rev. 37, 92 (1959); cf. Cardozo, "Law and Literature," 14 Yale Review 699, 715 (1925). As Professor Cunningham said, Andrews is important only because it marks "[t]he court's return to the philosophy of Ward v. Scott," 11 N.J. 117 (1952) (presaged by Grundlehner v. Dangler, 29 N.J. 256 (1959)) after the "temporary aberration" of Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189 (1955), and the "clear retreat" of Moriarity v. Pozner, 21 N.J. 199 (1956). Cunningham, "Control of Land Use in New Jersey," supra, at pp. 88, 89, 91.
The "philosophy" of Ward v. Scott referred to by Cunningham is stated in Andrews as follows: that "although hardship may constitute a special reason" for a variance under N.J.S.A. 40:55-39(d), it does not "exhaust the subject" and is not an essential prerequisite to its grant. There may be "special reasons" other than hardship but "no definition of `special reasons' has been attempted beyond the reference [in Ward v. Scott, supra, 11 N.J., at pages 125-126] to R.S. 40:55-32. In the nature of the subject, a precise formula is not feasible. Each case must turn upon *150 its own circumstances." Andrews, supra, 30 N.J., at page 251.
The court said in Andrews, 30 N.J., at page 249, that "[t]wo critical findings are required by the statute: (1) that the variance `can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance'; (2) that `special reasons' exist for the variance." Contrary to the wavering of the cases as to whether hardship is essential, there never has been any uncertainty about the absolute necessity of a finding that the variance "will not substantially impair the intent and purpose of the zone plan and zoning ordinance." As was said in Skaf v. Zoning Board of Adjustment of Asbury Park, 35 N.J. Super. 215, 222 (App. Div. 1955), "the `fixed and far reaching protective restriction' just referred to represents a requisite in addition to, and not substitutionary for, the affirmative requirement of `special reasons' in aid of the zoning purposes set forth in R.S. 40:55-32." See also Whitehead v. Zoning Board of Adjustment of Kearny, 51 N.J. Super. 560, 570 (App. Div. 1958).
We turn, therefore, to the findings of the zoning board of adjustment upon which the challenged variance was based. No. 1 merely recites that notice was given to all property owners within 200 feet of the site, and No. 2 gives the dimensions of the property in question. Then:
"(3) the Woodbridge Township Zoning Ordinance now in force and adopted 27 years ago in the year 1931, provides that the first 100 feet in depth of the premises fronting on St. George Avenue be zoned for business and that all the rest of the tract in question be zoned for residence;
(4) St. George Avenue is a very heavily travelled public thoroughfare and is also a State Highway, and Chain O'Hills Road is a fairly well travelled public street;
(5) there has been a considerable business growth in the past several years on St. George Avenue in this area, and many of the business establishments are not attractive ones;
(6) the erection of the proposed structure will be a considerable aesthetic improvement in the area as it is a very attractive structure."
*151 No. 7 says that "adequate buffers are provided in order to screen off the proposed project from the adjacent residential area" (the "buffers" being the triangular westerly tip of the property and the rustic fence around the premises), and No. 8 that "off-street parking will be more than adequate for the operation of the establishment." Then:
"(9) the operation of modern business in this era definitely requires more than a property depth of 100 feet and the trend is to much larger sites;
(10) Supermarkets are proper elements of good planning and should be located at or near residential areas to supply a need and a community service, as would be done in the present instance;
(11) the conversion of lots 12 and 13 into another means of access is a suitable, proper and beneficial adjunct to the proposed operation for the double access would lessen congestion in the streets and promote safety, and would be a very convenient artery for the public coming and going on Chain O'Hills Road.
(12) there will be no adverse effect on property values in the neighborhood, and real estate values will not be depreciated.
(13) the highest and best use of the premises in question is as a plot for business use, as exemplified by the contemplated use in this instance, for it would prevent the overcrowding of land or buildings, avoid undue concentration of population, lessen congestion in the streets, enhance the character of the district, and would conserve the value of the property and be its most appropriate use.
(14) the applicant has shown many special reasons why the variance should be granted.
(15) the relief requested can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
No. 15 is merely a conclusion, expressed in the exact words of the statute. Nos. 5, 6, 7, 8, 11, 12, and part of 13 are the findings of fact upon which this conclusion is based. Therefore, if they do not support No. 15, the so-called "negative requirement" of N.J.S.A. 40:55-39 has not been satisfied. We find that they do not.
Nos. 5 and 6 refer to the 100-foot strip along St. George Avenue zoned for business. There is nothing in the findings or the evidence that suggests that this supermarket would be an "aesthetic improvement" of the affected residential area. In fact, as we shall see, the evidence is to the contrary.
*152 No. 7, in effect, says that the variance will not distress the neighboring residents, and Nos. 8 and 11 that it will not increase the area's traffic or parking problems. We find that No. 7 is not supported by the evidence. The triangular tip and the rustic fence cannot be "adequate buffers" against this floodlighted operation involving the coming and going of hundreds of automobiles until late in the evening. As we have said, the lots on North Hill Road are only 125 feet deep and those on Chain O'Hills Road an average of 200 feet deep, and the proposed operation will be conducted right up to the rear boundary of all the lots except those bordering on the triangular tip. As to Nos. 8, 11 and that portion of No. 13 which finds that the variance would "lessen congestion in the streets," there is no proof of any present parking problem or congestion in the streets which will be alleviated by the proposed use.
The basic error in the approach of the board is that it found the strip business zone ordinance antiquated and attempted to amend it with this variance. That is obvious from Nos. 3, 5, 9, 10 and 13. For example, the board pointed critically to the fact that the ordinance was "adopted 27 years ago in the year 1931, [and] provides that the first 100 feet in depth of the premises fronting on St. George Avenue be zoned for business and that all the rest of the tract in question be zoned for residence; * * * the operation of modern business in this era definitely requires more than a property depth of 100 feet and the trend is to much larger sites; * * * Supermarkets are proper elements of good planning and should be located at or near residential areas to supply a need and a community service * * *."
If the ordinance is so outmoded and ill-fitting, its alteration must be by amendment or revision. It may not be done by variance. We are aware of the difficulty often encountered in distinguishing the "legislative" from the "quasi-judicial," the "administrative" and the "discretionary" powers and activities of administrative bodies. In this case *153 we do not need to express an opinion upon the unresolved dispute as to what extent a zoning board of adjustment may take into consideration the need for "legislative" changes of the ordinance. Cf. Sussna, "Zoning in Transition," supra, at page 479, notes 8 to 11, and at page 480, notes 21 and 22. We merely hold that while a zoning board of adjustment undoubtedly has the right to take into consideration the contemporary effect and operation of the zoning ordinance under which it operates, together with all of the other facts and circumstances, it may not attempt with a massive variance to compensate for ordinance deficiencies as pervasive as those found here.
This business enterprise can not be thrust so deeply into the residential zone on this large tract without substantial detriment to the residents and without substantially impairing the intent and purpose of the zone plan and zoning ordinance. The defendants point to finding 12 that "there will be no adverse effect on property values in the neighborhood, and real estate values will not be depreciated." Even if that be true (which we doubt) it is not a sufficient answer. The residents are entitled to protect not only the dollar value of their property but as well the enjoyment of their homes and the preservation of their zone as residential. It may be that the introduction of a prohibited use might even enhance the dollar value of the affected residences, but the residents may not be forced to accept dollars in place of their right to retain, free of substantial impairment, "the intent and purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55-39. The extension by variance of land use zones is not to be measured by the dollar.
The Andrews case was quite different from the case at bar. In Andrews the zoning ordinance expressly permitted (30 N.J., at page 248) "apartment houses, garden apartments, apartment hotels, hotels, boarding houses, municipal buildings, churches, public schools, including playgrounds and accessory buildings, public parks, and public playgrounds," upon the recommendation of the board of adjustment under *154 N.J.S.A. 40:55-39(b). The variance involved in Andrews was for a parochial school which the court said, with obvious justification, was a "use * * * not dramatically different from those envisioned in the zoning plan." Andrews, 30 N.J., at page 250. Here the proposed use is dramatically different. Furthermore, in Andrews the large old house on the 16-acre tract there involved was to be retained, and "the exterior of the existing building [was] not to be changed or altered; * * * the property east of the building known as the front yard shall be maintained in its present state of landscaping; [and] * * * the convent and parochial school shall be limited to the existing main building." (Andrews, 30 N.J., at page 248; but see Justice Hall's dissent, 30 N.J., at page 261.) The Chief Justice therefore said, 30 N.J., at page 250, this "will contain the influences of the school within the perimeter of the property. In affirmative terms, some possible advantages may be added. The variance will preserve the attractive character of the premises against pressures, evident from the subdivision developments mentioned above, to raze a beautiful but uneconomic type of residence and to subdivide the tract. Thus the variance may well prove to be a buffer for the remaining properties in this relatively small Residence A district." For the variance at bar, the prognosis must be the reverse of that in Andrews, for the influences of the supermarket cannot possibly be contained within the perimeter of the property, and no counterbalancing advantage cognizable under the zoning law can accrue to the neighboring residence zone.
In short, the findings and the record fail to show that the "negative" criteria exist. That alone is sufficient to invalidate the variance. But the affirmative criteria of "special reasons" do not exist here either.
In Andrews the court said, 30 N.J., at page 251:
"The standard of section 32 here pertinent is the `general welfare.' That the education of children directly furthers the `general welfare' cannot be questioned. The education here to be provided is an accepted equivalent of public schooling. A need exists. Presently *155 the community's children of the Catholic faith attend a parochial school in Asbury Park, the facilities of which are hard pressed because of swelling population, as indeed are those of the public school in the township itself."
No such argument can be advanced for this supermarket. As we have said, there are nine supermarkets within a radius of two miles of these premises. A supermarket here may be convenient, but it is not necessary.
Defendants contend that they have proved hardship so severe as to be a special reason. The answer to this is that there is no such finding by the zoning board of adjustment. The board did find that "the highest and best use of the premises in question is as a plot for business use, as exemplified by the contemplated use in this instance * * *," but that is not a finding that it is not useable for purposes permitted in the zone. It is very likely true that the proposed use would be more profitable to the owners than the permitted uses, but that is not sufficient. Whitehead v. Zoning Board of Adjustment of Kearny, supra.
No. 14 said that "the applicant has shown many special reasons why the variance should be granted," but the findings do not state what those special reasons are, and we are not privileged to speculate. As we said, we find no special reasons whatever in the evidence.
For the foregoing reasons the judgment of the Law Division is reversed and the case is remanded with directions that judgment be entered in favor of the plaintiffs setting aside the variance.