39 N.J. Super. 18 (1956)
120 A.2d 487
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM H. MAIR AND THELMA C. MAIR, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1956.
Decided February 10, 1956.
*19 Before Judges GOLDMANN, FREUND and CONFORD.
*20 Mr. Irvine B. Johnstone, Jr., argued the cause for appellants (Messrs. Dughi & Johnstone, attorneys).
Mr. Robert S. Snevily argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendants were convicted in the Municipal Court of Westfield of having violated the local zoning ordinance which permits certain professional offices in a residence "A" zone, provided such office is accessory to and part of a residence. On appeal to the County Court the conviction was sustained. Defendants now appeal from that judgment.
Defendants are the owners of 330 Lenox Avenue, Westfield, N.J., located in a Residence "A" zone and consisting of a one-family house and lot. Immediately after purchasing the property from a Mrs. Donahue, they applied for and obtained a building permit on August 28, 1953 permitting Dr. Mair to make certain alterations which would convert the first floor of the premises to a clinical laboratory. The alterations resulted in the following arrangement: an office, treatment rooms and laboratory on the first floor; an apartment consisting of a living room, bedroom, bath and kitchen on the second floor, and an attic and basement. Dr. Mair uses the first floor; the second floor apartment, attic and half the basement are rented to Mrs. Donahue, the former owner, for residential purposes. On March 22, 1954 a complaint was filed against defendants for violating General Ordinance No. 630, the zoning ordinance of the Town of Westfield, adopted in 1946. That ordinance established Residence "A" and "B" zones, a Business zone and a Commercial and Industrial zone. Article 6, relating to the Residence "A" zone, provides in part:
"Section 1. Uses  In a residence `A' zone no building or structure shall be used and no building or structure shall be built, altered or erected to be used for any purpose other than the following * * *
a. A single family dwelling and accessory buildings.

* * * * * * * *
d. The office or studio of a professional person or artist, such as a doctor, dentist, lawyer, architect, engineer, artist, photographer, *21 teacher or musician, provided such office or studio is accessory to and part of a residence * * *."
The ordinance defines "accessory use" as "A use customarily incidental to the principal use of a building." "Single-family dwelling" is defined as "A detached house designed for the use of a single household, including a single person or 2 or more persons living as a family and wherein not more than 4 persons are sheltered or fed for profit." The municipal court convicted defendants of violating section 1(d) of Article 6 and imposed a fine of $100. The court found that the clinical laboratory on the first floor was not accessory to and part of a residence, as prescribed by the ordinance.
As noted, the County Court affirmed. The municipality waived payment of the fine and the County Court suspended sentence.
It may be mentioned, incidentally, that following the conviction in the municipal court the governing body of Westfield amended section 1(d) to read:
"The office or studio of a professional person such as a doctor * * * in a single-family house, providing the person using the office resides in the building, and providing further that such office or studio is accessory to and part of a residence * * *."
Defendants contend that the ordinance should be strictly construed, especially since it is penal in nature. They argue that the language of Article 6, section 1, of the ordinance was adopted to prevent a professional person who owned property in a Residence "A" zone from constructing an additional structure on the premises separate and apart from that of the residence, to house a professional office. If the professional office is connected with a structure used as a residence by anyone, the ordinance is not violated, because it was never intended by the language of the section in question to require that the professional person must also live in the residence. Plaintiff, on the other hand, contends that the ordinance requires the professional person to occupy the residence itself.
*22 Bassett, in his work on Zoning (1940), page 100, notes that:
"During the formative period of comprehensive zoning it became evident that districts could not be confined to principal uses only. It had always been customary for occupants of homes to carry on gainful employments as something accessory and incidental to the residence use. The doctor, dentist, lawyer, or notary had from time immemorial used his own home for his office. Similarly the dressmaker, milliner, and music teacher worked in her own home. The earliest zoning ordinances took communities as they existed and did not try to prevent customary practices that met with no objection from the community. Indeed there would have been great opposition to early zoning plans if efforts had been made to prevent doctors or dressmakers from using their own homes in residential districts. Customary incidental home occupations are therefore allowed as accessory uses, even in new houses in residential districts. * * *"
And see 1 Yokley, Zoning Law and Practice (1953), § 64, pp. 103ff; 1 Rathkopf, The Law of Zoning and Planning (3d ed. 1956), pp. 301ff.
At the oral argument counsel stipulated that the court might examine the entire text of the ordinance. In reading it, our purpose has been, as it always must be in construing ordinances and municipal by-laws, to discover and effectuate the local legislative intent.
"* * * Ordinances are to receive a reasonable construction and application, to serve the apparent legislative purpose. * * *
* * * The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the obvious reason and spirit of the expression. It is the settled rule that the construction may be enlarged or restrained according to the evident sense of the lawgiver. * * * The spirit of the legislative act will prevail over the literal sense of terms. * * * The intention is taken or presumed according to what is consonant to reason and good discretion. * * * That which is reasonably implied is as much a part of the ordinance as that which is expressed. * * *
* * * The legislative language is not to be given a strict or literal meaning when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the apparent legislative design. The will of the lawgiver `is to be found, not by the mechanical or formal application of words and phrases, but by the exercise of reason and judgment.' * * *"
Wright v. Vogt, 7 N.J. 1, 5, 6, 7 (1951).
*23 An examination of the ordinance shows that its obvious purpose was to preserve the residential character of the "A" zone and to restrict the professional use of a dwelling to the person living therein. Section 1(d) obviously was made purely for the convenience of professional people who normally operate from their homes. Cf. 8 McQuillin, Municipal Corporations (3d ed. 1950), § 25.130, p. 227.
The permitted use under the instant ordinance is a one-family residence. The professional use must necessarily be accessory to that overriding limitation. The ordinance itself defines "accessory use" as a use "customarily incidental to the principal use of a building." The definition accords with that usually assigned to it. See Webster's New International Dictionary (2d ed., unabridged, 1943). Defendants' use is not subordinate and incidental to the residential use of their tenant; the two uses are clearly different, their only connection being that they are both carried on in the same building. If defendants' argument is correct, then logically they could rent the first floor to another doctor for his use as a clinical laboratory, and the upper floors and basement to Mrs. Donahue as a residence. The result would be to permit the owner to maintain a professional building in Westfield's Residence "A" zone merely by having one residential tenant occupy the major part of the cubic footage of the dwelling.
Defendants place some stress on the fact that Westfield has changed its ordinance so that it now contains language specifically prohibiting the improper use with which they were charged. They contend this shows that no prohibition against their present use was intended in the ordinance as it formerly stood. We cannot agree. By the amendment the municipality merely sought to make clear in precise language what it meant by the above-quoted language of section 1(d).
We do not pass on the question of whether a clinical laboratory is an "office * * * of a professional person * * * such as a doctor * * *" under section 1(d) of the ordinance.
Affirmed.