## Lawrence Appeal

*William H. Mitman,* for appellant.

*Rogers & O'Neill,* for intervenors.

*MacElree, Platt, Marrone & Harvey,* for board of adjustment.

GAWTHROP, P. J., December 18, 1964.—Certain intervening property owners and citizen taxpayers of West Chester have appealed from the decision of the borough's zoning board of adjustment directing the zoning officer to issue a certificate of occupancy for use as a business office of Zobros, Inc.'s premises, a multistory stone house, situate in a B residence district of the borough, the certificate having been refused on the ground that such was not a permitted use under the zoning ordinance. The owner, seeking to use part of the premises as offices for Zobros, Inc., and as administrative offices of W. A. Bellows Co., Inc., manufacturers representatives, appealed to the board from that refusal, asking a "variation," properly a variance, from the terms of the ordinance but at the hearing before the Board asserted the right to the certificate

based on the accessory use terms of the ordinance. The Board grounded its decision on the owner's right to make such accessory use of the property. No evidence was taken by the court, the case was submitted on briefs only, and is now before us to determine whether the board manifestly abused its discretion or fell into error of law: Lance Appeal, 399 Pa. 311; Jacobi v. Zoning Board of Adjustment, 413 Pa. 286.

The owner's building, a former single family residence at the southwest corner of Church and Marshall Streets, consists of three stories and a basement. The second and third floors are rented to tenants for apartment use. The first floor, formerly rented as an apartment, is now under lease to the Pennsylvania Department of Public Assistance for "emergency" office use, but is still capable of and intended for future use as an apartment. The basement is substantially two large rooms finished for office use, plus a storage room.

Zobros, Inc., is a real estate holding company which owns this and one other property in the borough. Its sole stockholders are Robert J. Zobel, its secretary-treasurer, and his brother, Richard J. Zobel, its president. Robert J. Zobel is also president and Richard J. Zobel is also an officer of W. A. Bellows Co., Inc., which is manufacturer's representative in a four and one-half State area solely for Rust-Oleum Corp., a manufacturer of rust preventative paints. Bellows Co. has nine men besides Robert J. Zobel who are specialists in selling protective coatings and deal with architects, engineers and contractors entirely by telephone from the premises or by personal calls at the customers' offices. No goods are stored at, or sold or delivered from, the premises and only Robert J. Zobel and his personal secretary occupy the office, although his brother Richard calls there briefly daily before going "on the road" to sell, but spends not over 10 percent of his time in the office. No customers call personally at the office and no

sign is posted. Only two cars are parked at the curb in connection with the business operations. At some time in the past one Fred Mills, an architect and contractor, maintained offices for draftsmen in the basement but there is no evidence whatever as to when he did so or when that use was discontinued. In the same B residence district there are offices of physicians and dentists, all maintained in their residences, at four places in the block immediately north of the premises in question and of Marshall Street, bounded on the east by Church Street, on the north by Virginia Avenue, and on the west by Darlington Street.

While the owner did not press those arguments before the board, and the board did not pass upon either of the two questions, its appeal asked for the grant of a variance and its evidence indicated a possible claim of right to continue a nonconforming use existing at the time the ordinance was enacted. Neither ground has merit. The record is devoid of any evidence of a unique, peculiar and unnecessary hardship to the premises, as distinguished from a hardship arising from impact of the zoning regulations on the entire district, which is indispensable to granting a variance: Hasage v. Philadelphia Zoning Board of Adjustment, 415 Pa. 31; DiSanto v. Zoning Board of Adjustment, 410 Pa. 331. Neither is there any sufficient evidence to establish existence of a nonconforming use at the effective date of the ordinance. Any such use must have been lawful when begun and thereafter continuously maintained: Metzenbaum, Zoning, page 1241, et seq. The Board decided the appeal upon the only question sufficiently raised by the record, that of accessory use, but in our view they reached an erroneous conclusion.

Section 7—"B" of the ordinance lists numerous permitted uses in B residence districts. A business office use is not one of them. Business uses are fully provided for under section 10—Business Districts. But certain

accessory uses are permitted, as denominated in section 9, which in part here pertinent provides:

"In any residence district, accessory uses shall be uses *customarily incident* to the principle uses listed as permitted. They shall be understood to include, among other things:

1. An office or studio, such as that of a physician, dentist, musician, artist, teacher, architect, lawyer *or other professional person* when located within or directly attached to such dwelling, which is primarily used as a dwelling; . . . ." (Italics supplied.)

There are several reasons why the use proposed fails to qualify as an accessory use under the ordinance. A permitted accessory use under the ordinance must be customarily incidental to the residential occupancy of the building. The use here proposed obviously is not. Neither of the brothers Zobel resides there, none of the apartment tenants nor the Department of Public Assistance seeks to make the use here involved, and neither Zobros, Inc., nor W. A. Bellows Co., Inc., is a resident of the premises within the purview of the ordinance. We express no opinion of the propriety of renting space for "emergency" office use to the Department of Public Assistance because that matter is not raised. As was held in State v. Mair, 39 N. J. Super. 18, 120 A. 2d 487, the obvious purpose of the ordinance is to preserve the residential character of the district and restrict the *professional use* of the dwelling to the *persons living within it,* and the intent of the allowance of accessory uses is purely for the convenience of professional people who normally operate from their homes.

Use of the dwelling for a corporate business office is not the use by a professional person contemplated by the ordinance. The provision referring to examples of permitted accessory uses that such uses ". . . shall be understood to include, among other things certain

named professional uses" requires that other accessory uses shall be ejusdem generis with the types of use named. Obviously use as a business office is not. An exacting, accurate definition of "profession" which will preclude the possibility of controversy is impossible. But "profession" connotes something more than mere skill in performance of a task, especially an employment requiring a learned education, as those of divinity, law and physic; a calling in which one professes to have acquired some special knowledge used by way either of instructing, guiding or advising others or of serving them in some art. The word implies professed attainments in special knowledge and not mere skill: Howarth v. Gilman, 365 Pa. 50, 56, and footnote.

Thus in New York a consultant in matters of corporate reorganization and finance, where knowledge and skill resulted from business experience and not from any formal education or special instruction, like an investment counsellor, a market consultant and a specialist in office management, has been held not to practice a profession: People ex rel. Moffett v. Bates, 93 N. Y. S. 2d 313, 276 App. Div. 38, and cases there cited; and in Illinois an occupant's use of part of his residence as a real estate office is not a professional use of the premises: Village of Riverside v. Kuhne, 355 Ill. App. 547, 82 N. E. 2d 500. By analogy the proposed use of these premises is a business, not professional, use just as much as if U. S. Steel Corporation should open a sales office, or any well known real estate holding company might open a management office therein. Neither a manufacturer's representative selling paint nor the operator of a real estate holding company qualifies as a "professional" user of these premises under the above definition and authorities, and the uses proposed are barred by the ordinance as accessory uses in a B residence district.

The owners argue that there is a distinction between the A and B residence districts in the application of the accessory use provisions of the ordinance which supports the board's decision. Section 6—"A" residence districts provides as a permitted use:

"Accessory uses, incident to any of the principal uses above listed, *and not involving the conduct of a business.* (See Section 9.)" (Italics supplied.)

Section 7—"B" residence districts uses the same language through the word "listed," inclusive, but omits the phrase "and not involving the conduct of a business." But it too concludes: "(See Section 9)." The argument is made that the exclusion of the final phrase contained in the A district provision from that pertaining to B districts shows a legislative intent not to impose that restriction in B districts. But the reference to the provisions of Section 9, the accessory use section, made in both sections 6 and 7 indicates clearly to us that the section 9 provisions apply equally to both districts and, based upon the interpretation we give those provisions, business office use of premises in B districts is barred nevertheless. Otherwise the basic intent and purpose of the ordinance of confining business uses to business districts and of preserving the predominantly residential character of residence districts is wholly defeated.

There is no merit whatever in the final argument advanced on the owner's behalf that application of section 7 of the ordinance to this property so as to exclude the right to the accessory use here claimed is unconstitutional, arbitrary, unreasonable, confiscatory, discriminatory and not reasonably related to exercise of the police power. "Zoning is the legislative division of a community into areas in each of which only certain designated uses of land are permitted so that the community may develop in an orderly manner in accordance with a comprehensive plan": Best v. Zoning

Board of Adjustment, 393 Pa. 106, 110; Eves v. Zoning Board of Adjustment, 401 Pa. 211, 215.

We therefore conclude that the board of adjustment fell into error of law in reversing the action of the zoning officer.

The decision of the Zoning Board of Adjustment of the Borough of West Chester is reversed.