94 N.J. Super. 173 (1967)
227 A.2d 511
ARTHUR F. MAHLER, PLAINTIFF-RESPONDENT,
v.
THE BOARD OF ADJUSTMENT OF THE BOROUGH OF FAIR LAWN, AND THE BOROUGH OF FAIR LAWN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1967.
Decided March 9, 1967.
*175 Before Judges CONFORD, FOLEY and LEONARD.
Mr. Robert L. Garibaldi, Legal Assistant, argued the cause for appellants (Mr. Floyd V. Amoresano, Borough Attorney, attorney).
Mr. James A. Major argued the cause for respondent (Messrs. Major & Major, attorneys).
*176 The opinion of the court was delivered by CONFORD, S.J.A.D.
This is an appeal from a judgment of the Law Division setting aside a determination by the Board of Adjustment of Fair Lawn: (a) construing the "home occupation" provision of the municipal zoning ordinance to prohibit plaintiff's proposed use, and (b) refusing an alternative application for a recommendation to the mayor and council for a variance allowing the use. The Law Division held the action of the board of adjustment unjustified in both respects. We disagree and reverse.
Dr. Mahler, the plaintiff, is a young dentist who has resided with his family and carried on a rapidly growing practice in the premises in question on Fair Lawn Avenue in Fair Lawn since 1956. This is an R-1-3 Zone, primarily restricted to one-family residences on 65' x 100' minimum lots. The zone permits home occupations in the following language:
"Home Occupation: The professional office of a physician, surgeon, dentist, lawyer, artist, photographer, real estate or insurance agent or broker. Home occupation such as millinery, dressmaking or hairdressing, provided there is no display of goods visible from the street. In all instances the occupation shall be carried on only by a person within the dwelling or apartment used by him as his private residence and the space given over to said occupation shall not equal more than one-half of the first floor area of the building."
In the Spring of 1965 Dr. Mahler removed his family, consisting besides himself of his wife, two children and a full-time maid, to a new home in Glen Rock. The Fair Lawn building by then no longer adequately accommodated the combined requirements of the doctor's family and practice, since enlargement of the family was contemplated and the living quarters were cramped. By then Dr. Mahler's staff consisted, in addition to himself, of two part-time practicing dentists,[1] two full-time nurses, a part-time nurse and a part-time *177 hygienist. The building is a split-level structure. It includes a basement containing a bedroom; a first level devoted to the dental suite, comprising a reception room, nurses' stations, three treatment rooms, a study, lavatory and darkroom; a second level embracing a living room, dining room and kitchen; and a third level with three bedrooms and bath. The family living quarters were in the second and third levels, and the maid occupied the basement.

I
As indicated above, the first phase of the application before the board of adjustment was for a declaratory ruling as to whether the continued conduct of the dental practice in the building would fall within the permissive scope of the "home occupation" provision of the ordinance. The presentation of the applicant was that he would continue occasionally to use the basement bedroom to sleep in. Although the application and the doctor's testimony indicated an intention to rent out the main living quarters to a "caretaker," counsel volunteered that the applicant would be willing to keep the living quarters unrented if the board so stipulated in approving the application.
Dr. Mahler argued that in these circumstances the premises would constitute his "residence" although his "domicile" would concededly be at the family home in Glen Rock. However, in the course of cross-examination by a board member it was made clear that the contemplated "sleep-overs" would be only, or essentially, when he had emergency night calls. Dr. Mahler's position was that a person can have multiple residences although only one domicile, and that he would in the foregoing circumstances be a resident of the premises for purposes of the home occupation provision of the zoning ordinance and might thus lawfully continue to carry on his dental practice in the place.
The board of adjustment rejected the applicant's interpretation of the ordinance. It decided that the spirit as well as *178 the letter of the home occupation provision contemplated a professional use which was incidental to the primary function of the premises as the home of the occupant; that Dr. Mahler's home would be with his family in Glen Rock, not at the Fair Lawn address; and that the application was "clearly an attempt by subterfuge to meet the obvious intent and purpose of the ordinance in its requirements that the professional person must reside on the premises."
The Law Division judge, citing cases involving inheritance taxation and voting requirements, ruled that residence is distinguishable from domicile and that "plaintiff may comply" with the ordinance "even though his family may live elsewhere." There was no express finding that under the postulated facts the building would constitute the plaintiff's private residence, as required by the ordinance, but such a finding is plainly inferable. We deem that conclusion erroneous. State v. Mair, 39 N.J. Super. 18 (App. Div. 1956); Keller v. Town of Westfield, 39 N.J. Super. 430 (App. Div. 1956); Jantausch v. Borough of Verona, 24 N.J. 326, 334 (1957).
Keller v. Town of Westfield, supra, is conclusive that under this kind of home occupation ordinance provision the rental of a portion of the building to others, as first proposed by this plaintiff, would invalidate the carrying on of a professional activity therein. If there is no such occupancy by others, then the "residential" use of a bedroom and den by the dentist, if indeed such occasional emergency sleep-ins as plaintiff described can be fairly deemed a true residential use of the building, would become purely incidental to the continuing primary use of the premises for professional offices. That result would violate the plain intent and purpose of a homeowner provision of this type, as thoroughly demonstrated by this court and the Supreme Court in the cases cited above.
Although the facts in the Mair and Keller cases, supra (which involved a common factual background and zoning ordinance), are somewhat different from here, the rationale of home occupation provisions as illuminated in those opinions *179 is a fortiori applicable in the present case. In the Keller case the Westfield ordinance permitted the use of a building in a residential zone for the offices of specified categories of professionals "providing the person using the office resides in the building * * *." The ordinance had previously, as pertinent to the issue in the Mair case, read, "* * * provided such office or studio is accessory to and part of a residence." Both decisions held that the rental of part of the premises to others while the professional occupant and his wife lived elsewhere violated the ordinance. Keller additionally held that a variance for such use was unjustified under the "special reasons" provision of the statute. (As to this, more infra.) In Mair (39 N.J. Super., at p. 22) we quoted Bassett on Zoning (1940), p. 100, in support of the exposition that in the historic development of zoning, incidental uses were customarily permitted in relation to the principal uses to which the zoning district was restricted, and that since "The doctor, dentist, lawyer, or notary had from time immemorial used his own home for his office," such and comparable occupations were generally permitted in one's own home in residential districts. We stated, in relation to the ordinance there under construction, that "its obvious purpose was to preserve the residential character of the `A' zone and to restrict the professional use of a dwelling to the person living therein. Section 1(d) obviously was made purely for the convenience of professional people who normally operate from their homes." (at p. 23; emphasis added)
In Jantausch v. Borough of Verona, supra (primarily concerned with the question as to whether a beauty shop was a contemplated home occupation), where home occupations were allowed "incidental to the use as a residence, provided that such occupations shall be conducted solely by resident occupants of the building * * *," the Supreme Court said:
"The ordinance in limiting the `home occupations' to `such occupations as shall be conducted solely by resident occupants' and requiring `no display of products shall be visible from the street' indicates an intention to permit only such light occupations in the home that *180 could not change the character of the building from a home to a business or industrial establishment. Cf. Lemp v. Millburn Township, 129 N.J.L. 221 (Sup. Ct. 1942); State v. Mair, 39 N.J. Super. 18 (App. Div. 1956). The primary use of the premises by the occupant must be residential and the `home occupation' engaged in must be clearly incidental thereto. Thus, the `home occupation' must be such, even though it be a gainful pursuit, as can and must be carried on in a manner consistent with the use of the premises as a residence within the intent of the provisions of this particular ordinance." (24 N.J., at p. 334; emphasis added)
In view of the foregoing authorities, plaintiff cannot be permitted to carry on a dental practice in this building unless it is his home and its main use is as such. In addition to the reasoning in the authorities quoted above, it is evident that the very term "home occupation" in the ordinance lays bare that intent. Plaintiff's home is in Glen Rock, not Fair Lawn. The premises in question are no longer "his [Dr. Mahler`s] private residence," as required by and within the clear intent of the ordinance. At the very least, the main use of the building is no longer as such private residence but rather as a professional building. Any remaining residential use is purely incidental.
It is no answer to say that the external appearance of the building as a residence will not be changed by the departure of the family. This would be true of all residential buildings devoted in part to home occupations, but that does not gainsay the essentiality of the requirement that the main use of the building must be for the professional occupant's private residence.

II
We next consider whether the decision of the board of adjustment to deny a recommendation for a "special reasons" variance under paragraph (d) of N.J.S.A. 40:55-39 was so unwarranted as to have called for nullification by the Law Division.
Basically, the argument for the applicant was that there were valid "special reasons" for the variance in that, as a dentist, *181 he serves the general welfare of the community; that his departure from the area would cause him to lose his clientele and deprive them of his services; that he was unable to find other quarters in Fair Lawn large enough to carry on his practice and also to accommodate his family, or even quarters for dental offices alone; and that giving up this building as an office would entail a hardship in that he had recently made substantial expenditures to renovate it.
The case for satisfaction of the statutory "negative criteria," that there be findings by the board of no substantial detriment to the public good or substantial impairment of the zone scheme and plan, was attempted to be made by real estate expert testimony that neighborhood values would not deteriorate because the doctor was no longer living there with his family; that the property was situated within 800 feet of a major highway and within a block or so of a trucking firm and a prospective new public library, and that the boundary of the nearest commercial zone under the ordinance was a block and a half away. (The latter assertion is not fairly borne out by inspection of the zoning map; see infra.)
On the other hand, the proofs indicate that most of the area consists of homes, although a number of such homeowners practice various professions therein. For example, a next door neighbor, a medical doctor, objected to the variance since he and other professionals were abiding by the ordinance and the grant of a variance would harm the neighborhood. Plaintiff's expert testified that the homes in the neighborhood ranged in value from $18,000 to $46,000, and that they were well maintained. The zoning map of Fair Lawn indicates that plaintiff's property is at the approximate center of the R-1-3 zone in which it is located, and that the zone extends a considerable distance both north and south of the subject property. However, in the east-west direction the zone is only four or five blocks wide in this specific area.
Before the Law Division plaintiff established that in July 1966 the planning board of Fair Lawn submitted a proposed master plan for the municipality which would include a rezoning *182 of the area wherein the property here involved is situate so as to permit professional and office use on a 200-foot strip along both sides of Fair Lawn Avenue. No action had been taken by the mayor and council on the matter as of the hearing of this appeal. As of January 13, 1967, according to an affidavit of the borough attorney submitted at the court's request, the adoption of an ordinance to implement the proposed master plan had not been discussed by the mayor and council at either a "work session" or official meeting, or with the attorney.
The board of adjustment declined to recommend the variance. It rested its determination on pertinent findings of most of the facts aforestated and on the following conclusions. Plaintiff's family expansion is not a valid special reason to justify excusing the necessity under the ordinance that the family reside at the residence along with the professional occupant. Insofar as plaintiff relies upon the position that the practice of dentistry serves a public need, this is an obvious fact, but the governing body has amply and adequately provided for such services by the "home occupation" provision and permitting them in other zones. The board said:
"All doctors and dentists, as such, serve a public need; thus the same reason could be urged by all or some of these doctors and dentists for the use requested by applicant, and consequently the intent and purpose of the ordinance would be defeated and in its stead there would be created a professional building * * *."
The board continued: There are other "home occupation" users in the neighborhood, all of whom are complying with the ordinance. The character of the neighborhood has been maintained and preserved as residential and the houses therein range in value from $18,000 to $46,000. The fact that there are two business zones adjoining the residential zone in which the premises are located cannot serve to relax the requirements of the ordinance and permit the requested uses. A "special reasons" variance based on the nearness of the business zones "would in effect be gradually changing the *183 characteristics of a zoned locality by variance instead of legislative action." The requested variance would in effect "be creating a business or professional building." This would be "a serious departure from the intent and purpose of the ordinance" and would impair the zoning plan and scheme. The size of applicant's practice in conjunction with the traffic situation on Fair Lawn Avenue and the lack of parking space for employees and patients pose "serious questions of the public welfare and safety." For these reasons the ultimate conclusion was reached that the variance could not be granted without substantial detriment to the public good or impairment of the zone plan and ordinance.
On the variance issue, the Law Division judge merely stated:
"* * * [T]he plaintiff produced sufficient evidence to establish the criteria under the statute. The continuation of his office without his wife and children would not impair the zoning plan and ordinance and would have no effect upon traffic and other conditions in the area and would not be detrimental to the public good. * * * There are `special reasons' which relate to this particular property and affect no other surrounding property. See Yahnel v. Board of Adjustment of Jamesburg, 79 N.J. Super. 509 (App. Div. 1963). Boards of Adjustment must take a practical approach to an individual problem."
We infer the court meant as "special reasons" those specified by plaintiff and mentioned above, i.e., the relationship of plaintiff's dental practice to the general welfare, and the hardship involved in changing the location of his practice.
The resolution of this phase of the appeal must center about two problems: (a) did special reasons exist here which could have justified the board in recommending a variance, and (b) was the denial in this case so unjustified on the law and the facts as to have called for the reversal and mandate for variance by the court?
Of the several permissible bases for a "special reasons" variance under paragraph (d) of section 39 of the statute (see Bern v. Borough of Fair Lawn, 65 N.J. Super. 435, 446-447 (App. Div. 1961)), plaintiff's main reliance here is *184 upon the zoning criterion of the "promotion of the general welfare," a factor which, in a line of cases beginning with Andrews v. Ocean Twp. Board of Adjustment, 30 N.J. 245 (1959), has been held in itself sufficient to ground a (d) variance, provided, always, that the negative criteria of the statute are also satisfied. However, while Andrews indicates that no rigid formula can be devised to test a valid (d) variance on general welfare grounds (30 N.J., at p. 251), the typical variances sustained on that basis heretofore have been for uses of institutional dimension: Andrews, supra (parochial school); Black v. Town of Montclair, 34 N.J. 105 (1961) (parochial school); Yahnel v. Board of Adjustment, Jamesburg, 79 N.J. Super. 509 (App. Div. 1963), certification denied 41 N.J. 116 (1963) (telephone wire exchange); Kunzler v. Hoffman, 48 N.J. 277 (1966) (hospital for emotionally disturbed); see also Kramer v. Board of Adjustment, Sea Girt, 45 N.J. 268, 286, 290 (1965) (seaside hotel). In each of these cases the courts sustained grants of variances, holding there was no arbitrary or capricious action on the facts adduced. While one cannot say from these decisions that in order to warrant a variance based upon the "general welfare" criterion the use must necessarily be of institutional dimension, it would be safe to say, at the least, that a use of smaller scope should give a board of adjustment (and the governing body if called upon to approve a recommendation of variance) serious pause before allowing a variance justified only or primarily on the special reason of a relationship between the proposed use and promotion of the general welfare.
It is obvious that almost all lawful uses of property in our society serve in greater or lesser degree the promotion of the general welfare. If the social benefits of any individual use were, on the basis of the general welfare concept, to be regarded as an adequate special reason for a (d) use variance, we would have, in effect, the untoward and clearly unintended consequence that variances could be awarded indiscriminately merely because they did not offend the negative criteria of the statute. See Skaf v. Zoning Board of Adjustment. Asbury *185 Park, 35 N.J. Super. 215, 222 (App. Div. 1955); cf. Rockhill v. Chesterfield Twp., 23 N.J. 117 (1957). The affirmative statutory requirement of special reasons is no less integral to the case for a variance than the negative criteria of absence of substantial detriment to the public good and impairment of the zone scheme and plan.
In a not too dissimilar situation, this court reversed the grant of a special reasons variance to allow a medical laboratory in part of a dwelling in a residential zone where the operator and his wife were to live elsewhere. Although the applicant had invested substantial sums in alterations of the property upon the basis of the previous grant of a building permit, apparently issued on the assumption that the use would be a home occupation allowed by the ordinance, the court in Keller v. Town of Westfield, supra (per Judge, now Justice, Francis) said:
"A departure from the requirement for residence in such cases is authorized only when it would be consistent with the spirit of the zoning plan and in harmony with N.J.S.A. 40:55-39(d). The record before us is barren of circumstances showing undue hardship or special reasons, within the legislative intendment. Accordingly, the grant of variance cannot be sustained." (39 N.J. Super., at p. 436)
In any case, however, the conclusive consideration here is that, whether or not the board could properly have granted a variance recommendation in this situation, there is utterly no basis for a judicial conclusion that it acted arbitrarily, capriciously or unreasonably in exercising its discretionary quasi-judicial powers by denying such a recommendation. And that is the controlling criterion on judicial review, whether the board grants or denies a variance. Kramer v. Board of Adjustment, Sea Girt, supra, 45 N.J., at pp. 296-297.
Our cases recognize that there is an area of special discretion reposed in the local agencies within which, in many situations, either the grant or denial of a (d) variance would be judicially sustained. The board of adjustment weighs the facts and the zoning considerations, pro and con, and will be *186 sustained if its decision comports with the statutory criteria and is founded in adequate evidence. See Rain or Shine Box Lunch Co. v. Newark Board of Adjustment, 53 N.J. Super. 252, 259 (App. Div. 1958); Yahnel v. Board of Adjustment, Jamesburg, supra, 79 N.J. Super., at p. 519.
Moreover, as we stated in Cummins v. Board of Adjustment, Leonia, 39 N.J. Super. 452, 460 (App. Div. 1956), the judicial philosophy of sympathetic approach to local zoning decisions (Ward v. Scott, 16 N.J. 16, 23 (1955)) is "even more cogently applicable to a case where we review a denial of a variance than where we review a grant, for generally speaking more is to be feared from a breakdown of a zoning plan by ill-advised grants of variances than by refusals thereof," citing Beirn v. Morris, 14 N.J. 529, 536 (1954). Cf. Wilson v. Borough of Mountainside, 42 N.J. 426, 443 (1964).
In the present case the board made a full and complete exposition of the facts and reasoning for its conclusion that a grant of variance would offend the zone scheme in substantial particulars, and that the "special reasons" advanced were not persuasive.
As to the pending master plan, one aspect of which, if adopted, would convert Fair Lawn Avenue in this zone to professional and office use, the board was bound to deal with the application on the basis of the zone districting as it then stood. And we are bound to deal with it as it now stands. There is as yet no change. No one can say whether, when, or to what extent the recommended master plan will be implemented by ordinance. There may well be opposition to this phase of it by the homeowners in the area on any hearing on the proposal. In the interests of fairness, however, and the borough having consented thereto, we shall accede to plaintiff's alternative request, made after oral argument, that we stay the reversal mandate in this case for a period of six months so that the plaintiff may have an opportunity to avail himself of any permissive zone change, if any, which may be adopted in the interim by the borough.
*187 Reversed; mandate on reversal stayed for a period of six months from date.
FOLEY, J.A.D. (dissenting).
I agree with the majority that upon the facts of this case the trial court was without warrant to overturn the factual finding of the board of adjustment that "special reasons" for a variance were not established. Compare Keller v. Town of Westfield, 39 N.J. Super. 430 (App. Div. 1956).
However, I dissent from the majority's holding that on the facts presented the ordinance should be construed, in effect, to prohibit the carrying on of plaintiff's dental practice unless the premises are occupied by the doctor and his family as their home. The majority places reliance upon an a fortiori application of Keller, supra, and State v. Mair, 39 N.J. Super. 18 (App. Div. 1956), the subject matter of which was the same property involved in Keller. The Keller case, while relevant to the majority's determination of the variance issue, has bearing upon the construction of the ordinance only to the extent that the Keller court accepted the conclusion reached in Mair that under the ordinance there construed, residence in the building by the professional person was a prerequisite to the maintenance of an office therein. In Mair the court held that rental of the residence portion of the premises to another (not contemplated here) did not comply with the ordinance, since the residence requirement was limited to residence by the person operating the accessory professional use. Neither case went so far as to define the degree of residence required, or to suggest that the residence be the exclusive residence of the professional occupant and his family.
It clearly appears that neither the external appearance of the premises in question, nor its internal functions will be changed in the slightest as respects the zoning scheme if plaintiff and his family live elsewhere, and plaintiff makes occasional use of the premises for residential purposes. The property presently appears to be a residence dwelling property, *188 and will continue to so appear. The extent of the interior use for professional purposes area wise is limited by the provisions of the ordinance. The residence portions will simply remain vacant unless the doctor or his family occasionally choose to use them. Therefore, I see no discernable benefit in aid of the zoning plan to be accomplished by the majority's strictly literal interpretation of the language of the ordinance. On the other hand, a more liberal interpretation which would do no violence to the zoning plan would permit the doctor to maintain his practice to the benefit of the community, and accommodate his expanding family in accordance with its needs, by accepting as being qualified under the ordinance his exclusive, though limited, occupation of the portions of the premises which are reserved for residential purposes.
All that is necessary to accomplish this purpose is to equate the ordinance words "used by him as his private residence" to "used by him as a private residence." (Emphasis added) The wording of the ordinance admits of this interpretation since it does not specifically proscribe the occupant of the premises from having two residences, in one of which, other than that partially devoted to his professional activities, he maintains his family in the family "home."
It seems to me that the increasingly liberal approach taken by our courts in favor of individuals where their rights come in conflict with a governmental authority or regulation, at least suggests that where the intent of an ordinance is subject to doubt, and where the equities are predominantly, if not exclusively, on the side of the individual, a construction in his favor should be adopted. I strongly believe that this is such a case.
I agree with the majority that the master plan presently before the governing body and which, beyond question, would permit the requested use, not having been adopted by the governing body to date, is undeterminative of the case. However, I think that this presumably authoritative recommendation of the planning board, based upon the views of experts retained by the municipality, may be taken into consideration *189 as one weighs the improbability of adverse effect upon the zoning scheme if the present ordinance is liberally construed in favor of plaintiff in order to prevent what appears to me to be a manifest injustice to him, without corresponding benefit to the welfare of the community.
I would affirm.
NOTES
[1] Since the other dentists did not reside at the premises, there is apparently some question as to whether their activities did not constitute a violation of the ordinance, but this point has not been raised or argued.