127 N.J. Super. 60 (1973)
316 A.2d 64
SHELL OIL COMPANY, PLAINTIFF-RESPONDENT,
v.
ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF SHREWSBURY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 21, 1973.
Decided March 21, 1973.
*61 Before Judges KOLOVSKY, MATTHEWS and CRAHAY.
Mr. Robert H. Otten argued the cause for the appellant (Messrs. Crowell & Otten, attorneys; Mr. David W. Clark on the brief.)
Mr. Lawrence A. Carton, III argued the cause for the respondent (Messrs. Pillsbury, Barnacle, Russell & Carton, attorneys; Mr. John G. Colannino on the brief.)
PER CURIAM.
The judgment, ordering the Board of Adjustment to recommend variances for gas station use, is affirmed essentially for the reasons expressed in Judge Lane's opinion in the Law Division.
The trial court recognized the presumption of correctness, fairness and proper motivation that a decision of the Board of Adjustment carries and of its limited scope of judicial review. Also acknowledged was that a Board's acceptance or rejection of the testimony of witnesses, where such choice was reasonable, was conclusive on appeal.
*62 On the basis of plaintiff's proofs Judge Lane specifically found reasons for the grant of a (d) variance and rejected the Board's specifications in denying the application.
The Board has found;
"... that the relief requested by the applicant cannot be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance of the Borough of Shrewsbury;
1. The proposed use would cause additional congestion at an already congested intersection;
2. There is no way to prevent traffic from crossing the highway and creating additional risks to the motorists at the intersection;
3. The land in question could be put to a better and higher use;
4. Additional gas stations are not needed in the Borough of Shrewsbury and would not benefit the residents of the Borough of Shrewsbury.
5. The area involved is adjacent to an area which is composed of a large tract of land which is undeveloped;
6. The proposed use could have a deleterious effect on the future development of the surrounding undeveloped land;
7. No hardship has been shown by the applicant;
8. There are three Shell gas stations within a short distance of the residents of the Borough of Shrewsbury;
9. Gasoline stations are not a permitted use in the Borough of Shrewsbury;
10. The use sought is not particularly fitted to the location for which the variance is sought and special reasons do not exist for the granting of the variance ..."
The findings of a Board of Adjustment must be substantially grounded in sufficient competent evidence. Izenberg v. Board of Adjustment of City of Paterson, 35 N.J. Super. 583, 588 (App. Div. 1955); Dolan v. DeCapua, 16 N.J. 599, 610 (1954); Stolz v. Ellenstein, 7 N.J. 291, 295 (1951).
Here, we hold that the Board's findings were at best conclusional and not fairly supported by the proofs submitted. Significantly, the Board did not specifically find plaintiff's proofs incredible or unpersuasive.
Affirmed.
KOLOVSKY, J.A.D. (dissenting).
An applicant for a use variance under N.J.S.A. 40:55-39(d) has the burden of *63 establishing (1) that "special reasons" exist for the variance and (2) that the variance "can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
In my opinion, the finding of the Board of Adjustment (Board) that "special reasons do not exist for the granting of the variance" sought by Shell Oil Company (Shell) was not arbitrary or unreasonable and indeed was mandated by the proofs before it. From my reading of the applicable authorities, I am satisfied that there was no warrant for the trial court's order directing the Board to recommend to the Borough's governing body that Shell be granted a variance to allow it to operate a gasoline service station  a use not permitted in the zone under the Borough's zoning ordinance  on the 1.7 acre tract which Shell had obligated itself to purchase if it was able to obtain the variance.
Apposite is what this court said, in reversing a trial court judgment ordering a Board of Adjustment to recommend a variance, in Mahler v. Borough of Fair Lawn, 94 N.J. Super. 173 (App. Div. 1967), which was affirmed unanimously on the opinion below in 55 N.J. 1 (1969). In Mahler, supra, we noted (at 183) that in a situation such as is here presented,
The resolution * * * of the appeal must center about two problems: (a) did special reasons exist here which could have justified the board in recommending a variance, and (b) was the denial in this case so unjustified on the law and the facts as to have called for the reversal and mandate for variance by the court?
The Mahler opinion, after discussing at length what may constitute a "permissible" basis for a "special reasons" variance under N.J.S.A. 40:55-39 (d) grounded upon the zoning criterion of the "promotion of the general welfare", then continued at 185-186:
In any case, however, the conclusive consideration here is that, whether or not the board could properly have granted a variance recommendation in this situation, there is utterly no basis for a *64 judicial conclusion that it acted arbitrarily, capriciously or unreasonably in exercising its discretionary quasi-judicial powers by denying such a recommendation. And that is the controlling criterion on judicial review, whether the board grants or denies a variance. Kramer v. Board of Adjustment, Sea Girt, supra, 45 N.J., at pp. 296-297.
Our cases recognize that there is an area of special discretion reposed in the local agencies within which, in many situations, either the grant or denial of a (d) variance would be judicially sustained. The board of adjustment weighs the facts and the zoning considerations, pro and con, and will be sustained if its decision comports with the statutory criteria and is founded in adequate evidence. See Rain or Shine Box Lunch Co. v. Newark Board of Adjustment, 53 N.J. Super. 252, 259 (App. Div. 1958); Yahnel v. Board of Adjustment, Jamesburg, supra, 79 N.J. Super., at p. 519.
Moreover, as we stated in Cummins v. Board of Adjustment, Leonia, 39 N.J. Super. 452, 460 (App. Div. 1956), the judicial philosophy of sympathetic approach to local zoning decisions (Ward v. Scott, 16 N.J. 16, 23 (1955) is "even more cogently applicable to a case where we review a denial of a variance than where we review a grant, for generally speaking more is to be feared from a breakdown of a zoning plan by ill-advised grants of variances than by refusals thereof," citing Beirn v. Morris, 14 N.J. 529, 536 (1954). Cf. Wilson v. Borough of Mountainside, 42 N.J. 426, 443 (1964).
Shell's 1.7 acre tract is in a B-2 business zone in which, under the zoning ordinance, premises may be used for the following purposes:
1. Shopping centers limited to such uses as retail shops and stores, personal service establishments, professional and business offices, banks and restaurants except lunch wagons, diners, roadstands or outdoor drive-in refreshment stands. In addition, such shopping centers may also contain those uses set forth in Paragraph 2 hereafter.
2. Grocery, meat market, bakery, drugs and pharmaceutical store, package liquor store, stationery, tobacco and newspaper store, barber or beauty shops, shoe repair shops, dry cleaning pick-up shops, professional offices, banks and fiduciary institutions, department stores, hardware stores, auto part stores, apparel shops, any other retail shop not specifically hereinabove enumerated, such as jewelry, hat, leather goods, hand bag, books, gifts, music and similar retail enterprises.
While the ordinance requires a minimum lot area of 300,000 square feet in B-2 zones, the deficiency in lot area of the 1.7 acre tract is of no material significance. The owner *65 of the tract would be entitled, under N.J.S.A. 40:55-39(c), to a variance from the 300,000 square foot area requirement of the ordinance and to such other variances from the "bulk" provisions of the ordinance as may be necessary to enable it to use the 1.7 acre tract for one or more of the numerous uses permitted in a B-2 zone by the quoted provisions of the ordinance.
The trial court concluded that the "special reason" which entitled Shell to the use variance it sought was "undue hardship". I find no warrant for such a conclusion in the record and, more significantly, no justification for holding that the Board acted arbitrarily in determining from the evidence before it that the asserted "hardship" had not been proven.
"Undue hardship" may of course constitute a "special reason" for a use variance. Andrews v. Ocean Twp. Board of Adjustment, 30 N.J. 245, 251 (1959). But undue hardship is not established by a showing that the proposed use would be more profitable to the owner than the permitted uses. "The extension by variance of land use zones is not to be measured by the dollar." Schoelpple v. Woodbridge Twp., 60 N.J. Super. 146, 153 (App. Div. 1960); Jenpet Realty Co., Inc. v. Ardlin, Inc., 112 N.J. Super. 79, 85 (App. Div. 1970), cert. denied 57 N.J. 436 (1971); Kohl v. Mayor and Council of Fair Lawn, 50 N.J. 268 (1967). See also Bern v. Fair Lawn, 65 N.J. Super. 435 (App. Div. 1961), in which this court said at 450:
Certainly a property owner is not entitled to a variance merely to serve the most profitable or economical use of the property if other less profitable uses are still reasonably feasible.
Here the trial court said in reaching its conclusion that "undue hardship" existed:
There was sufficient competent evidence to show that it would not be reasonably feasible to use the lot for any of the permitted uses. Unless used for a gasoline station the evidence indicates that the lot will remain vacant.
*66 As I have heretofore noted, however, the controlling question is not whether "there was sufficient competent evidence to show that it would not be reasonably feasible to use the lot for any of the permitted uses." (Emphasis added) Rather it is whether the evidence was such that it was arbitrary and unreasonable for the Board to find otherwise.
In my view, not only did the evidence presented not rise to that stature, it would not support a finding that other permitted uses were not reasonably feasible on the 1.7 acre tract. At most, the testimony of Shell's real estate expert, who noted that a shopping center was to be built on an adjoining tract, indicated that a gasoline station in the area was needed, that such use was the highest and best use to which the property could be put and would present fewer problems, traffic and otherwise, than would any of the uses permitted by the ordinance.
I would reverse.