133 N.J. Super. 418 (1975)
337 A.2d 54
ELIZABETH B. SHIELDS, PLAINTIFF-APPELLANT,
v.
BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MANSFIELD; TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MANSFIELD, COUNTY OF WARREN; PENWELL RACQUET CLUB, INC., A NEW JERSEY CORPORATION; EDWARD FABER AND RAYMOND MALEJKO, INDIVIDUALLY AND TRADING AS PENWELL RACQUET CLUB, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 1975.
Decided April 14, 1975.
*419 Before Judges CARTON, CRANE and KOLE.
Mr. Francis P. Sutton argued the cause for appellant.
Mr. William R. Edleston argued the cause for respondent Board of Adjustment of Mansfield Township (Mr. Harry K. Seybolt, attorney).
Mr. Joseph R. Valentino argued the cause for respondent Mansfield Township Committee.
Mr. Thomas E. Stover argued the cause for respondents Edward Faber and Raymond Malejko, individually and trading as Penwell Racquet Club.
*420 PER CURIAM.
The only issue which need concern us on this appeal is whether the board of adjustment and township committee properly held that the recreational use of the premises here in question constituted a special reason for the grant of a variance under N.J.S.A. 40:55-39(d). The trial judge held that it did and affirmed the municipal action. We hold to the contrary and hence reverse. We so hold, mindful of the somewhat limited scope of review by a trial court and appellate court of this kind of municipal determination. See, e.g., Shell Oil Co. v. Shrewsbury Zoning Bd. of Adj., dissenting opinion, 127 N.J. Super. 62, 63-64 (App. Div. 1974), rev'd on dissenting opinion, 64 N.J. 334 (1974).[1]
Defendant Penwell Racquet Club, Inc.[2] was granted a use variance under N.J.S.A. 40:55-39(d) by the Mansfield Township Committee, after favorable recommendation of the board of adjustment. The land involved is a site of ten acres, which was part of a larger tract owned by one of the applicant's principals. Only a small portion of it is in the B-2 highway commercial zone. Most of the land is in the R-1 residential zone, in which indoor tennis courts are not permitted. Outdoor tennis courts, however, are a permitted use in the R-1 zone by special exception, on application to the board of adjustment. Although zoned residential, the area in which the site is situated is generally undeveloped, except for agricultural use.
The proposed use involves the construction on the ten-acre parcel of a two-story building to be used as an indoor tennis facility with six tennis courts, locker rooms, sauna baths, a babysitting room, a conference room for companies desiring to use the facility in connection with a recreation program, *421 a television area, rest rooms, a vending area consisting of vending machines, a pro shop where equipment may be purchased, and custodial and utility space. The building apparently would also house two or three squash and handball courts. There would be seven outdoor tennis courts. The entire facility would be privately owned and operated as a business. A membership fee would be charged and participants would pay for court time at varying rates. Five full-time employees would include a pro, a manager and maintenance personnel.
We find no reasonable basis in the proofs or in the subsidiary findings made by the municipal agencies to sustain the ultimate conclusion, which they appear to have made, that the recreational use sought is peculiarly suited to this land.
Assuming for present purposes that the findings which follow are supported by the evidence, that ultimate conclusion may not be predicated on any or all of them: (1) that the property is located in two zones, thereby requiring a variance for any use not permitted in both zones; (2) that outdoor tennis courts constitute a permitted special exception use in the R-1 zone, and the special exceptions provisions relating to outdoor recreational facilities contemplate buildings such as that here proposed; (3) that the location of the property is unique in that it has frontage on two roads, Route 57 and Penwell Road, and thus the property would not be "conducive" for development for residential purposes; (4) that the property is unique in that it is the only parcel on the south side of Route 57 zoned R-1 for a distance of about 2,400 feet located between two commercial zones; (5) that the proposed use would be compatible with the development of the area, since it is adjacent to and part of the commercial zone and across the street from the township school; (6) that lands to the east of the proposed site along the highway cannot be readily developed and are owned by the State; (7) that the nearest tennis facility is 19 to 20 miles away and the proposed use would be the only indoor recreational *422 facility in the township; (8) that apart from the residence of one of the principals there are "little or no existing residences in the area"; (9) that the site is centrally located to residents of the township and to the principal population centers of Hackettstown and Washington, and could be used conveniently by the township board of education in connection with the school; (10) that most of the remaining land in the township is rural and not readily accessible to all of the residents of the township and the surrounding areas; (11) that there may be a "flood potential" of residential homes constructed adjacent to the Musconetcong River at or near the proposed site, and (12) that there is no other property in the township zoned to permit both outdoor and indoor tennis courts or other similar recreational use.
None of these reasons indicates that the proposed recreational use is peculiarly fitted to this property. Moreover, the entire area surrounding the applicant's property is basically undeveloped, and the record fails to support the findings, among others, that the surrounding areas are not available for commercial development, including the recreational use sought; that they are not readily accessible to all residents; that the property here involved is subject to a flood potential or otherwise not suitable for residential development, and that an appropriate area for this use could not be found elsewhere in the township. See Kohl v. Fair Lawn Mayor and Council, 50 N.J. 268 (1967); Mahler v. Fair Lawn, 94 N.J. Super. 173 (App. Div. 1967), aff'd o.b. 55 N.J. 1 (1969).
The conclusion by the municipal agencies that the proposed recreational use is peculiarly fitted to this site is thus without reasonable foundation. Accordingly, the determination of the court below holding to the contrary is incorrect.
Hence, the variance may only be predicated on a finding sustained by the proofs that the proposed use inherently serves the public good or welfare. Kohl v. Fair Lawn Mayor and Council, supra; De Simone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428 (1970); Bonsall v. Mendham *423 Tp., 116 N.J. Super. 337 (App. Div. 1971), certif. den. 59 N.J. 529 (1971).
The board of adjustment and township committee in effect so found. They referred to the need in the area for recreational facilities, particularly of an indoor nature, and the benefit ensuing from a recreational facility of this type to the "public health and welfare of the citizens and taxpayers" of the township. The trial court agreed. We conclude that in so doing, it erred.
Recreation and sports have been recognized judicially as valid public purposes appropriate for the government to undertake under the state constitutional provisions relating to the raising and use of public moneys only for public purposes. In this context it has been considered as "intimately related to the general welfare of a well-balanced state" and as "absolutely essential to the public welfare." N.J. Sports and Exposition Auth. v. McCrane, 119 N.J. Super. 457, 488-493 (Law Div. 1971), aff'd, with modification, on other gds., 61 N.J. 1 (1972).
But this concept of the public good may not be imported into the zoning area for use variance purposes. To recognize a commercially operated recreational facility of the kind here contemplated as a use inherently serving the public good or welfare so as to constitute a special reason for a variance under N.J.S.A. 40:55-39(d) would serve effectively to nullify the purpose of that provision and the decisions interpreting it. The beneficial effect of recreation, both indoor and outdoor, is also applicable to other recreational uses, such as bowling alleys, billiard parlors, health spas and the like. If the proposed use inherently serves the public good and welfare, then these uses, as well as other recreational uses in a commercial setting, must be granted variances in a residential zone under N.J.S.A. 40:55-39(d).[3] Such a construction of the statute is totally unwarranted. See Mahler *424 v. Fair Lawn, supra; Kohl v. Fair Lawn Mayor and Council, supra; Whitehead v. Kearny Zoning Bd. of Adj., 51 N.J. Super. 560 (App. Div. 1958), involving an attempt to obtain a use variance in a residential zone for a swimming pool at a nonprofit private club; Tullo v. Millburn Tp., 54 N.J. Super. 483, 499-500 (App. Div. 1959); Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 292 (1965). See and compare Cooper v. The Maplewood Club, 43 N.J. 495 (1964), which, however, related to whether the negative criteria were satisfied by the proposed construction of a swimming pool at a private club in a district which did not preclude it.
Biglin v. West Orange, 46 N.J. 367 (1966), and Lander v. Village of South Orange, 58 N.J. 509 (1971), involving municipal swimming pools, are not to the contrary. Both were concerned with lands dedicated for park, playground or recreational purposes, and whether the dedication permitted the installation of a municipal swimming pool thereon. Neither related to a use variance proceeding. Indeed, in Biglin a playground was a permitted special exception use within the residential zone involved, and the court indicated that the zoning ordinance would not be violated by constructing the municipal pool as part of the dedicated playground facilities.
The statement by this court in Newark v. Daly, 85 N.J. Super. 555 (App. Div. 1964), aff'd 46 N.J. 48 (1965), that "to refer to a particular use in a residential district as a `business use' is not per se sufficient to stamp it as a violation of the zoning ordinance," must be limited to the situation there involved  a determination as to whether a zoning ordinance permitting apartment houses in a residential district would allow milk vending machines in an apartment house. A variance was not there in issue.
The present case involves a use variance which would permit a commercial indoor-outdoor recreational facility in a residential district precluding the indoor use. To say that such recreational use inherently serves the public good and, therefore, constitutes a special reason warranting a variance is to *425 permit, in effect, the "untoward and clearly unintended consequence that variances could be awarded indiscriminately merely because they did not offend the negative criteria of the statute." Mahler v. Borough of Fair Lawn, supra, 94 N.J. Super. at 184. See, generally, Annotation, "Application of zoning regulations to golf courses, swimming pools, tennis courts, or the like," 32 A.L.R.3d 424 (1970).
Defendants claim that if this recreation use were a public or quasi-public enterprise, it would have to be permitted in a residential zone and that, accordingly, a similar private commercial recreation use must be allowed. They rely on cases which hold that it is the nature of physical use of the property, rather than the kind of ownership, which determines the applicability of zoning requirements. See Bridge Park Co. v. Highland Park, 113 N.J. Super. 219 (App. Div. 1971); Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 125 N.J. Super. 376 (App. Div. 1973).
This argument misconceives the issue before us. It is not the nature of the ownership but rather the nature of the use with which we are concerned with respect to this use variance. We need not decide whether the municipality itself may construct and operate a facility such as is here contemplated in the R-1 residential zone. See Thornton v. Ridgewood, 17 N.J. 499 (1955); Washington Tp. v. Ridgewood, 26 N.J. 578 (1958); In re Application of Hackensack Water Co., 41 N.J. Super. 408, 421 (App. Div. 1956); Scotch Plains Tp. v. Westfield, 83 N.J. Super. 323 (Law Div. 1964). Compare Biglin v. West Orange, supra; Hill v. Collingswood, 9 N.J. 369 (1952). But assuming that it may do so, the fact that the recreational use is sponsored by the public agency in and of itself may give the use the quality required for inherently serving the public good. Cf. De Simone v. Greater Englewood Housing Corp. No. 1, supra, 56 N.J. at 442. A similar use and operation in a residential zone by a commercial enterprise cannot be said to have that effect.
Of course, there is nothing in what we have said which would prevent the municipality, in accordance with *426 the Zoning Act, from rezoning the area of which this property is a part in such a way as to permit this kind of use either with or without the necessity for obtaining a special exception. See Hyland v. Morris Tp. Mayor and Tp. Comm., 130 N.J. Super. 470 (App. Div. 1974), aff'd o.b. 66 N.J. 31 (1974); Kozesnik v. Montgomery Tp., 24 N.J. 154 (1957); Southern Burlington Cty. NAACP v. Mount Laurel Tp., 67 N.J. 151, 181, n. 12 (1975); De Simone v. Greater Englewood Housing Corp. No. 1, supra, 56 N.J. at 443. Indeed, many of the reasons the municipality advanced for granting the variance, if properly supported, might serve as a justification for such rezoning.
Reversed.
NOTES
[1] We need not decide, therefore, the question of whether the negative criteria under the statute have been met.
[2] It is unclear whether the actual applicant was the corporation or individuals trading as Penwell Racquet Club.
[3] Assuming, of course, that the statutory negative criteria are met.